Fourth Division
August 16, 2007

No. 1-02-3220 & 1-02-3221 (Consolidated)

| | | |
|---|---|---|
| FRITZ REDELMANN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| CLAIRE SPRAYWAY, INC., OLIN CORPORATION, | ) | |
| REXFORD RAND CORPORATION, PVS CHEMICALS | ) | |
| (ILLINOIS), INC., ROWELL CHEMICAL CORPORATION, | ) | |
| SEELER INDUSTRIES, INC., ATOCHEM NORTH | ) | |
| AMERICA, INC., BASF WYANDOTTE CORPORATION, | ) | |
| and PHIBRO CHEMICALS, INC., | ) | |
| | ) | |
| Defendants-Appellees, | ) | |
| | ) | |
| and | ) | No. 98 L 11350 |
| | ) | |
| (Alexander Chemical Corporation, The Butcher Company, Inc., | ) | |
| Cardinal Chemical Corporation, Clorox Products Manufacturing | ) | |
| Company, C.P. Sales Company, Ecolab, Inc., K.A. Steel Chemicals, | ) | |
| Inc., NYCO Products, Inc., PPG Industries, Inc., Stevens Chemical | ) | |
| Company, Sunnyside Corporation, S.C. Johnson & Son, Inc., S.C. | ) | |
| Johnson Commercial Markets, Inc., West Sanitation Services, | ) | |
| Inc., Hysan Corporation, Wepak Corporation , Canberra | ) | |
| Corporation, Velsicol Chemical Corporation, Select Specialty | ) | |
| Sales, L.L.C., and Chemical Packaging Corporation, | ) | Honorable |
| | ) | Lynn M. Egan, |
| Defendants.) | ) | Judge Presiding. |

JUSTICE NEVILLE delivered the opinion of the court:

These consolidated appeals arise from the entry of an order on September 10, 2002, that

denied Fritz Redelmann's motion requesting that the trial court reconsider its orders of May 10, 2002,

1-02-3220 & 1-02-3221 (Consolidated)

and June 7, 2002. In the May 10, 2002, order, the trial court granted with prejudice defendant Claire-Sprayway, Inc.'s (Claire-Sprayway) motion under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2004)) to dismiss the conspiracy counts in Redelmann's sixth amended complaint directed at Claire-Sprayway. The trial court also included the other defendants that joined in Claire-Sprayway's motion, BASF Wyandotte Corp. (BASF), Olin Corporation (Olin), Clorox Products Manufacturing Co. (Clorox), and Rexford Rand Corporation (Rexford). In the June 7, 2002, order, the trial court granted with prejudice defendants' section 2-615 motion to dismiss the conspiracy counts in Redelmann's sixth amended complaint against Atofina Chemical, Inc. (Atofina), Seeler Industries, Inc. (Seeler), Rowell Chemical Corp. (Rowell), PVS Chemicals, Inc. (PVS), and Phillip Brothers Chemicals, Inc. (Philbro).

Redelmann presents the following issues for our review: (1) whether the trial court erred (a) by dismissing the conspiracy counts of the sixth amended complaint with prejudice and (b) by denying the motion to reconsider the aforementioned dismissal order; (2) whether the trial court erred in declining to grant Redelmann's request for leave to amend the conspiracy counts against Claire-Sprayway and Atofina; and (3) whether the trial court erred in failing to lift a stay on discovery and order Claire-Sprayway and Atofina to comply with outstanding discovery requests. For the reasons that follow, we affirm.

BACKGROUND

Redelmann was employed from May 1990 through May 1998, as a custodian, maintenance and repair worker with the Rolling Meadows Park District (Park District). In October 1998, plaintiff filed his initial complaint for injuries he allegedly sustained because of exposure to chemical products

during his employment. Redelmann's theory of liability was based on his claim that, as a maintenance worker, he was repetitively exposed to hydrochloric acid and other chemicals while cleaning floors, repairing swimming pool equipment and performing other job duties which caused him to develop conditions including but not limited to neurobehavioral dysfunction, degenerative brain disease, and lung damage.

On February 15, 2001, Redelmann filed a fifth amended complaint that alleged that both Claire-Sprayway and Atofina, along with numerous defendants[1], conspired to conceal and affirmatively misstate the hazards of exposure to hydrochloric acid and other chemicals and that Redelmann's injuries were a direct and proximate result of that conspiracy. Redelmann structured his fifth amended complaint by including a conspiracy count against one defendant, BASF Wyandotte Corporation, which was incorporated by reference in conspiracy counts against Claire-Sprayway, Atofina and others unrelated to the issues raised in this appeal. The conspiracy count in the fifth amended complaint alleged as follows:

"7.) On April 22, 1987, employees of defendants BASF,

Butcher, Canberra, Claire[-Sprayway], Clorox, Ecolab, Olin, PPG,

S.C. Johnson & Sons, S.C. Johnson Commercial Markets, Velsicol

---

[1] Alexander Chemical Corporation, BASF Wyandotte Corp., C.P. Sales Co., Canberra Corporation, Cardinal Chemical Corp., Chemical Packaging Corporation, Clorox Products Manufacturing Co., Ecolab, Inc., Hysan Corporation, K.A. Steel Chemicals, Inc., NYCO Products, Inc., Olin Corporation, PPG Industries, Inc., Phibro Chemicals, Inc., PVS Chemicals (Illinois), Inc., Rexford Rand Corporation, Rowell Chemical Corp., S.C. Johnson & Son, Inc.; S.C. Johnson Commercial Markets, Inc., Seeler Industries, Inc., Select Specialty Sales, L.L.C., Stevens Chemical Co., Sunnyside Corporation, The Butcher Company, Inc., Velsicol Chemical Corp., Wepak Corporation, West Sanitation Services, Inc.

and Wepak met with Douglas Fratz and other employees of the Chemical Specialties Manufacturers Association, 1913 Eye St., N.W., Washington, D.C., and by teleconference, and entered into a common scheme and agreement to create the Hydrogen Chloride Joint Venture for the purpose of misleading government regulators and evading governmental controls on hydrogen chloride.

8.) As of January 21, 1988, each of the co-defendants Elf Atochem [ATOFINA], Jones Hamilton, Phibro, Rexford Rand, PVS, Rowell and Seeler joined in the conspiracy to mislead government regulators and evade governmental controls on hydrogen chloride.

9.) By February 12, 1991, each of the co-defendants Butcher, Clorox, Ecolab, Elf Atochem [Atofina], Olin, Phibro, PPG, PVS, Rexford Rand, Rowell, Seeler and Velsicol joined in the conspiracy to suppress and misstate data on hydrogen chloride, and each defendant understood the general objectives of the scheme to use Hydrogen Chloride Steering Committee to conceal the hazards of hydrogen chloride, and each defendant accepted them, and agreed, explicitly or implicitly, to do its part, and to further those objectives.

10.) As of June 1, 1994, each of the co-defendants Butcher, Clorox, Ecolab, Elf Atochem [Atofina], Olin, Phibro, PPG, PVS, Rexford Rand, Rowell, Seeler and Velsicol joined the conspiracy to

use the Hydrogen Chloride Joint Venture and Steering Committee to conceal and misstate the hazards of hydrogen chloride, understood the objectives, and each defendant accepted them, and agreed, explicitly or implicitly, to do its part, and to further those objectives.

11.) By June 15, 1994, each of the co-defendants Butcher, Clorox, Ecolab, Elf Atochem [Atofina], Olin, Phibro, PPG, PVS, Rexford Rand, Rowell, Seeler and Velsicol had joined the conspiracy to use the Hydrogen Chloride Steering Committee and Hydrogen Chloride Joint Venture to deceive government regulators to suppress information on the hazards of hydrogen chloride, and each defendant accepted them, and agreed, explicitly or implicitly, to do its part, and to further those objectives.

12.) From April 22, 1987 through May 12, 1998 the defendants BASF, Butcher, Canberra, Claire-Sprayway, Clorox, Ecolab, Elf Atochem [Atofina], Hysan, Jones Hamilton, Nyco, Olin, Phibro, PPG, PVS, Rexford Rand, Rowell, S.C. Johnson & Sons, S.C. Johnson Commercial Markets, Seeler, Velsicol and Wepak assisted and enabled the conspiracy."

On July 9, 2001, the trial court dismissed the conspiracy counts of the fifth amended complaint because it was "factually insufficient as it contains mere conclusions that the defendants joined in the conspiracy and understood its general objectives: this is not sufficient." The trial court

upheld the conspiracy counts against Claire-Sprayway and others, holding:

"Plaintiff has alleged: an agreement between various defendants; to commit the unlawful act of misrepresenting the dangers of HCL through inadequate labeling, misinformation, etc.; and that these acts caused harm to the Plaintiff. These are the necessary elements to be pleaded to sustain a cause of action for conspiracy. Plaintiff also alleges the dates and places where the defendants allegedly met to discuss the conspiracy, as well as the individuals present at the meetings."

On November 20, 2001, Redelmann filed a sixth amended complaint which again alleged a conspiracy count against defendants S.C. Johnson & Sons and S.C. Johnson Commercial Markets and incorporated the allegations in the count by reference into the counts against Claire-Sprayway, Atofina and other defendants. The sixth amended complaint did not adopt or reference the allegations contained in the fifth amended complaint. The conspiracy allegations in the sixth amended complaint are as follows:

"9.) On January 16, 1990, at the headquarters of the Chemical Specialties Manufacturers Association (CSMA) at 1913 Eye St., N.W., Washington, D.C., Hydrogen Chloride Steering Committee members, Canberra *** Drackett *** Diversey *** Lehn & Fink Products *** Boyle-Midway *** Spartan Chemical *** Creative Chemical and *** Oxford Chemicals entered into a common plan to

illegally conceal and affirmatively misstate the toxicity and exposure hazards of hydrogen chloride.

***

12.) On February 23, 1990 *** Diversey Wyandotte *** Drackett *** Spartan Chemical *** Zep Manufacturing *** Carroll Co and Boyle-Midway met at the Hotel Lombardy, Washington, D.C. and conspired to conceal and affirmatively misstate the hazards of hydrogen chloride.

13.) On July 10, 1990 the defendants S.C. Johnson, Hysan, Nyco and Canberra furthered the conspiracy to conceal the hazards of hydrogen chloride by seeking the cooperation and assistance of CSMA members and non-member participating companies. The defendants S.C. Johnson, Hysan, Nyco and Canberra obtained the cooperation of co-defendants including *** BASF *** Butcher *** Claire-Sprayway *** Clorox *** Olin *** PPG *** Rexford Rand and *** Velsicol Chemical. Defendants BASF, Butcher, Claire-Sprayway, Clorox, Olin, PPG, Rexford Rand and Velsicol agreed to use only the Steering Committee's forms.

***

30.) From July 1990 through May 1998 the defendants BASF, Butcher, Claire-Sprayway, Clorox, Ecolab, Elf Atochem [Atofina],

> Hysan, Nyco, Olin, Phibro, PPG, PVS, Rexford Rand, Rowell, S.C.
> Johnson & Sons, S.C. Johnson Commercial Markets, Seeler, Velsicol
> and Wepak assisted and enabled the conspiracy by committing various
> reporting violations."

According to Claire-Sprayway, the defendants in the various conspiracy counts of the sixth amended complaint can be separated into three groups: (1) defendants that were part of a hydrochloric acid joint venture or steering committee that allegedly "entered into a common plan or scheme to illegally conceal and affirmatively misstate the toxicity and exposure hazards of hydrogen chloride" and that allegedly "conspired to conceal and affirmatively misstate the hazards of [hydrochloric acid];" (2) defendants who provided cooperation and assistance to the members of the first group by agreeing (a) to use only steering committee forms; (b) not to reveal their own consulting reports and other information to regulators, the scientific community and the public; (c) not to communicate with the Environmental Protection Agency (EPA) on their own; and (d) to suppress or misstate any evidence of central nervous system dysfunction and other diseases; and (3) defendants who allegedly assisted and enabled and furthered the conspiracy (a) by using their own material safety data sheets (MSDS) and customer communications to misrepresent that the corrosiveness of hydrogen chloride provided an adequate safety warning; (b) by concealing their knowledge that the long-term effects of exposure to low levels of hydrochloric acid had not yet been determined; (c) by concealing their knowledge of the odor and irritation threshold of hydrochloric acid; and (d) by concealing their knowledge of a link between exposure to hydrochloric acid and neurobehavioral dysfunction. According to Claire-Sprayway, it is a group two conspiracy defendant

while Atofina is a group three conspiracy defendant. According to BASF, it would be considered both a group two and group three conspiracy defendant because Redelmann alleges it conspired to conceal and misstate the health effects of HCL through the activities of the CSMA and steering committee. BASF is alleged to have provided cooperation and assistance to the group one defendants and assisted, enabled and furthered the conspiracy by helping the members of the steering committee.

On January 31, 2002, Claire-Sprayway filed a section 2-615 motion to dismiss the sixth amended complaint with prejudice. Also on January 31, 2002, Atofina filed a section 2-615 motion to dismiss the conspiracy count against it with prejudice. Claire-Sprayway argued that Redelmann failed to properly plead the elements of a conspiracy claim by failing to allege how it agreed with other defendants to use only steering committee forms or conspired and wrongfully failed to report the dangers of its products. Claire-Sprayway also argued that Redelmann failed to include allegations that the defendants knew of a conspiracy or knowingly agreed to further its objectives. On February 1, 2002, BASF filed a combined section 2-619(a)(9) motion to dismiss and a section 2-615 motion to dismiss the sixth amended complaint. BASF adopted and joined in Claire-Sprayway's section 2-615 motion to dismiss and argued that Redelmann failed to allege that the group two conspiracy defendants knew of or agreed to participate in the alleged conspiracy. BASF also joined in Atofina's section 2-615 motion to dismiss arguing that Atofina, along with other non-trade group defendants including BASF, engaged in nothing more than parallel conduct.

On May 10, 2002, the trial court granted Claire-Sprayway's section 2-615 motion to dismiss with prejudice. The trial court's order included BASF. The trial court held as follows:

"Significantly, the conspiracy claim that survived defendant's motion to dismiss (Fifth Amended Complaint) included a specific allegation that Claire-Sprayway met with other defendants on April 22, 1987 and 'entered into a common scheme and agreement to create the Hydrogen Chloride Joint Venture for the purpose of misleading government regulators and evading governmental controls on hydrogen chloride.' *** Such an allegation is sufficient to make out a conspiracy claim against Claire-Sprayway. However, it is not part of the sixth amended complaint. Such a deliberate omission is important. A considerable amount of time has passed since the original complaint was filed and a certain amount of discovery has occurred. Yet, plaintiff now presents a complaint with fewer, and less specific, allegations as to the conspiracy claim against Claire-Sprayway. As a result, it is reasonable to conclude plaintiff will never be able to allege facts sufficient to state a cause of action for conspiracy against Claire-Sprayway."

On June 7, 2002, the trial court granted Atofina's section 2-615 motion to dismiss the conspiracy claim against it with prejudice. Redelmann argued that the trial court should not grant Atofina's motion to dismiss because he needed to take discovery. The trial court had previously held that there would be no discovery without prior leave of court, which Redelmann failed to get. In ruling on Atofina's section 2-615 motion to dismiss with prejudice, the trial court held:

"Plaintiff has failed to adequately state a claim for conspiracy. ***

- 10 -

Moreover, because plaintiff has been given several opportunities to amend his complaint to remedy these pleading deficiencies, but has been unable to do so, this court concludes he will never be able to state a cause of action for conspiracy. As a result, dismissal with prejudice is appropriate."

In dismissing the conspiracy counts against the group two and group three defendants, the trial court also held:

"Plaintiff's remarks during oral argument about the need for discovery do not compel a different conclusion. Although this court appreciates that conspiracies are often 'shrouded in mystery,' and that some relaxation of pleading requirements is occasionally justified when information necessary to state a claim is in the exclusive control of the defendants, Illinois remains a fact pleading jurisdiction and plaintiff must plead facts specific to the essential elements of his cause of action. Requests for discovery are not a substitute for compliance with this basic requirement."

Despite the fact that BASF joined in the motion leading to the June 7, 2002 order, BASF was not included in the trial court's written order.

On June 28, 2002, Redelmann filed a motion for reconsideration of the June 10, 2002, order dismissing Atofina and the non-trade-group defendants, including BASF, with prejudice and argued that the element of knowledge and common agreement was well-pleaded. The motion to reconsider

also argued, in the alternative, that the trial court should lift the discovery stay and order the defendants to comply with outstanding discovery before ruling on the motion to dismiss. On September 10, 2002, the trial court denied the motion to reconsider in an order containing the language found in Supreme Court Rule 304(a) that "there is no just reason for delaying either enforcement or appeal or both." 210 Ill. 2d R. 304(a).

On August 16, 2002, Atofina and the non-trade-group defendants filed a response brief to the motion for reconsideration. BASF joined in that brief. On September 5, 2002, Redelmann filed a reply brief to the motion to reconsider in which he argued for the first time that BASF's dismissal should be vacated because it misrepresented its status as a non-trade-group defendant because it was a member of the CSMA. On September 10, 2002, the trial court denied the motion to reconsider.

On October 29, 2002, Redelmann filed an appeal from the May 10, 2002, order dismissing Claire-Sprayway with prejudice that was docketed as No. 1-02-3220 (Claire-Sprayway appeal). Also on October 29, 2002, Redelmann filed an appeal from the June 7, 2002, order dismissing Atofina with prejudice that was docketed as No. 1-02-3221 (Atofina appeal). On December 6, 2002, Redelmann moved to have this court consolidate the Claire-Sprayway appeal and the Atofina appeal. On December 17, 2002, this court consolidated the Claire-Sprayway appeal and the Atofina appeal.

ANALYSIS

Standard of Review

The Illinois Supreme Court has consistently held that "[a] section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2002)) challenges the legal sufficiency of a complaint based on defects apparent on its face." Marshall v. Burger King Corp., 222 Ill. 2d 422, 429 (2006), citing City of Chicago v. Beretta U.S.A. Corp., 213 Ill. 2d 351, 364 (2004). An order granting or denying a

section 2-615 motion to dismiss is reviewed de novo. Marshall, 222 Ill. 2d at 429, citing Wakulich v. Mraz, 203 Ill. 2d 223, 228 (2003). "In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts." Marshall, 222 Ill. 2d at 429, citing Ferguson v. City of Chicago, 213 Ill. 2d 94, 96-97 (2004). In reviewing the sufficiency of a complaint, Illinois courts are instructed to construe the allegations in the complaint in the light most favorable to the plaintiff. Marshall, 222 Ill. 2d at 429, citing King v. First Capital Financial Services Corp., 215 Ill. 2d 1, 11-12 (2005). Therefore, pursuant to section 2-615, Illinois courts should not dismiss causes of action unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. Marshall, 222 Ill. 2d at 429, citing Canel v. Topinka, 212 Ill. 2d 311, 318 (2004). In order to assist Illinois courts in reviewing the sufficiency of complaints, the Illinois Supreme Court has consistently emphasized that Illinois is a fact-pleading jurisdiction. Marshall, 222 Ill. 2d at 429, citing Weiss v. Waterhouse Securities, Inc., 208 Ill. 2d 439, 451 (2004). Accordingly, although complaints do not need to contain evidence (Chandler v. Illinois Central R.R. Co., 207 Ill. 2d 331, 348 (2003)), a complaint cannot be merely conclusory (Anderson v. Vanden Dorpel, 172 Ill. 2d 399, 408 (1996)) but must allege facts sufficient to bring a claim within a legally recognized cause of action. (Marshall, 222 Ill. 2d at 429-30, citing Vernon v. Schuster, 179 Ill. 2d 338, 344 (1997)).

Conspiracy

Redelmann argues on appeal that the trial court erred in granting the section 2-615 motion to dismiss the sixth amended complaint because he sufficiently pled the requisite elements of a conspiracy claim. Redelmann argues that a reading of the entire sixth amended complaint

demonstrates that Claire-Sprayway possessed the requisite knowledge to be found to have participated in a common agreement to conspire. Redelmann alleges that T.H. Ehler, a Claire-Sprayway employee, agreed to cooperate with codefendants (1) to use hydrogen chloride steering committee forms; (2) not to reveal Claire-Sprayway's internal evidence that hydrochloric acid causes central nervous system dysfunction; (3) not to reveal Claire-Sprayway's consultant reports, lab findings, adverse reaction reports, employee health findings and other information to government regulators, the scientific community or the public; (4) not to communicate with the EPA on its own or to misstate evidence of central nervous system dysfunction caused by hydrochloric acid inhalation. Redelmann also argues that the trial court incorrectly ignored his allegation that because Claire-Sprayway assisted and enabled the alleged conspiracy (1) by misrepresenting the corrosiveness of hydrogen chloride and claiming in its MSDSs and customer communications that there were adequate safety warnings; (2) by concealing scientific data that showed that employees had already inhaled a dangerous level of hydrogen chloride by the time they became symptomatic from the irritant effects; (3) by concealing its knowledge that the Occupational Safety & Health Administration (OSHA) ceiling value of 5 parts per million of hydrogen chloride was routinely exceeded; (4) by concealing its knowledge that the long-term effects of exposure to low levels of hydrogen chloride have not been determined; (5) by misrepresenting the odor and irritation threshold; and (6) by concealing data showing a link to neurobehavioral dysfunction.

Redelmann also argues that the trial court failed to recognize that the sixth amended complaint alleges that Claire-Sprayway assisted and enabled the conspiracy by knowingly submitting fraudulent, false and incomplete data and waiver request to the EPA and by adopting and enforcing requirements

of the steering committee (1) that the results of research remain confidential; (2) that any manuscript discussing the results be submitted to the CSMA prior to publication; and (3) that Claire-Sprayway would discourage and preempt independent research. Redelmann argues that Claire-Sprayway directly participated in the conspiracy by deliberately violating the Toxic Substances Control Act (15 U.S.C. §2601 et seq. (2006)), the Emergency Planning and Community Right-To-Know Act of 1986 (42 U.S.C. §11001 et seq. (2006)), the Illinois Chemical Safety Act (430 ILCS 45/1 et seq. (West 2004) and the Illinois Toxic Substances Disclosure to Employees Act (820 ILCS 255/1 et seq. (West 2004)).

Redelmann also argues that the trial court misunderstood the allegations in the sixth amended complaint that charged Atofina with knowledge of a conspiracy and a common agreement to participate therein. Redelmann argues that the trial court failed to consider the evidence in the light most favorable to him, the non-movant in the section 2-615 motion to dismiss.

Claire-Sprayway and Atofina argue that the trial court properly dismissed the conspiracy counts against them because those counts contain no factual allegations that either Claire-Sprayway or Atofina entered into an agreement. Claire-Sprayway and Atofina argue that Redelmann has merely pled conclusions that members of the joint venture or the steering committee obtained the cooperation of Claire-Sprayway and Atofina. Claire-Sprayway and Atofina argue that it is insufficient to repeat allegations of wrongdoing and attempt to characterize them as having assisted and enabled a conspiracy in the absence of an allegation of an agreement. Claire-Sprayway and Atofina argue that it is insufficient to claim conspiracy merely because these defendants adopted and enforced requirements of the steering committee, intentionally failed to notify the EPA and other regulatory

authorities and violated statutes because those allegations allege unilateral wrongdoing that do not demonstrate that Claire-Sprayway and Atofina had knowledge of or understood the conspiracy and its objectives. Claire-Sprayway and Atofina argue that, although Claire-Sprayway may have agreed to use steering committee forms and communicate with the EPA through the committee rather than individually, there is no allegation in the sixth amended complaint that it knew of a scheme, knew it was wrongful or knowingly agreed to conspire. Similarly, allegations that Atofina concealed or misrepresented the dangers of its product does not mean that Atofina knew of the conspiracy and knowingly assisted and enabled it. Claire-Sprayway and Atofina argue that there is no such thing as accidental, inadvertent or negligent participation in a conspiracy and that Redelmann has failed to allege more than that because, at best, he has merely alleged parallel conduct, which cannot be the basis of an agreement to conspire or knowledge of a conspiracy.

Claire-Sprayway and Atofina also argue that the fact that Redelmann's conspiracy claims in the fifth amended complaint were found by the trial court to be sufficient cannot help him in the evaluation of the sixth amended complaint because the sixth amended complaint does not contain those successful allegations and completely supercedes the fifth amended complaint which is not at issue before this court.

Because "[a] section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2002)) challenges the legal sufficiency of a complaint based on defects apparent on its face" (Marshall, 222 Ill. 2d at 429, citing Beretta U.S.A. Corp., 213 Ill. 2d at 364), we will focus on whether Redelmann has properly alleged the elements of a civil conspiracy. "The elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action

either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." Fritz v. Johnston, 209 Ill. 2d 302, 317 (2004), citing Adcock v. Brakegate, Ltd., 164 Ill. 2d 54, 62-63 (1994). The function of a conspiracy claim is to extend tort liability from the active wrongdoer to wrongdoers who may have only planned, assisted or encouraged the active wrongdoer. Adcock v. Brakegate, Ltd., 164 Ill. 2d at 62, citing W. Prosser, Torts §46, at 293 (4th ed. 1971). However, "[t]he mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss." Buckner v. Atlantic Plant Maintenance, Inc., 182 Ill. 2d 12, 23 (1998), citing Hume & Liechty Veterinary Associates v. Hodes, 259 Ill. App. 3d 367, 369 (1994).

We recognize that civil conspiracies are rarely proven directly. McClure v. Owens Corning Fiberglas Corp., 188 Ill. 2d 102, 134 (1999), citing Walsh v. Fanslow, 123 Ill. App. 3d 417, 422 (1984). More often, civil conspiracies are established " 'from circumstantial evidence and inferences drawn from evidence, coupled with common-sense knowledge of the behavior of persons in similar circumstances.' " McClure, 188 Ill. 2d at 134, quoting Adcock, 164 Ill. 2d at 66. When a civil conspiracy is shown by circumstantial evidence, the evidence must be both clear and convincing. McClure, 188 Ill. 2d at 134, citing Majewski v. Gallina, 17 Ill. 2d 92, 99 (1959), Tribune Co. v. Thompson, 342 Ill. 503, 529 (1930), and Bosak v. McDonough, 192 Ill. App. 3d 799, 804 (1989).

In order to connect a defendant to an alleged civil conspiracy, the complaint must allege the " 'necessary and important element' " of the existence of an agreement. McClure, 188 Ill. 2d at 133, quoting Adcock, 164 Ill. 2d at 62. The complaint must allege that the defendant knowingly and voluntarily participated in the common scheme at the heart of the alleged civil conspiracy. McClure,

188 Ill. 2d at 133, quoting Adcock, 164 Ill. 2d at 64. Therefore, because the participation must be both knowing and voluntary, our supreme court has held that "[a]ccidental, inadvertent, or negligent participation in a common scheme does not amount to conspiracy." McClure, 188 Ill. 2d at 133-34, citing Adcock, 164 Ill. 2d at 64. Similarly, the "[m]ere knowledge of the fraudulent or illegal actions of another is also not enough to show a conspiracy." McClure, 188 Ill. 2d at 134, citing Tribune Co. v. Thompson, 342 Ill. 503, 530 (1930). Consequently, " '[a] defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy.' " McClure, 188 Ill. 2d at 134, quoting Adcock, 164 Ill. 2d at 64. However, " '[a] defendant who understands the general objectives of the conspiratorial scheme, accepts them, and agrees, either explicitly or implicitly[,] to do its part to further those objectives *** is liable as a conspirator.' " McClure, 188 Ill. 2d at 134, quoting Adcock, 164 Ill. 2d at 64.

In the June 7, 2002, order, the trial court held Redelmann failed to allege in the sixth amended complaint that Claire-Sprayway and Atofina, the moving defendants, agreed to participate in the common scheme underlying the alleged civil conspiracy or knew of an agreement. We agree with the trial court's holding that Redelmann's allegations against Claire-Sprayway and Atofina claim that they assisted, enabled and furthered the conspiracy by their conduct in (1) adopting the enforcement requirements of the steering committee; (2) failing to notify the EPA and other regulatory authorities of the dangers of exposure to hydrochloric acid and other chemicals; and (3) violating legislative enactments such as the Toxic Substances Control Act, the Emergency Planning and Community Right-To-Know Act, the Illinois Chemical Safety Act, and the Illinois Toxic Substances Disclosure to Employees Act. Redelmann's allegations are conclusory because he fails to provide specific facts

which establish that Claire-Sprayway and Atofina knew of the existence of a civil conspiracy and agreed to participate in it. Although "[c]onspiracies are often intentionally 'shrouded in mystery,' which by nature makes it difficult for the plaintiff to allege with complete specificity all of the details of the conspiracy"(Adcock, 164 Ill. 2d at 66), the complaint " 'must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred' " (Time Savers, Inc. V. LaSalle Bank, N.A., 371 Ill. App. 3d 759, 771 (2007), quoting Fritz, 209 Ill. 2d at 318). For example, Claire-Sprayway's agreement to use steering committee reporting forms and to communicate with the EPA through the auspices of the steering committee does not ipso facto constitute an allegation in the sixth amended complaint that establishes Claire-Sprayway's knowledge of or acquiescence in a wrongful scheme or that it knowingly agreed to conspire. The conspiracy count against Atofina in the sixth amended complaint, despite the allegation that Atofina "possess[ed] the requisite knowledge of the conspiracy," suffers from the same infirmity because Redelmann merely alleged that Atofina concealed or misrepresented information concerning the hazards of its products without alleging that Atofina knew of the conspiracy or knowingly assisted or enabled it. Even if we were to assume arguendo that Claire-Sprayway and Atofina did everything Redelmann claims they did, thereby considering their actions in the light most favorable to Redelmann, we are not prepared to conclude that the commission of such actions meant that Claire-Sprayway and Atofina knowingly and voluntarily participated in the common scheme to commit an unlawful act or a lawful act in an unlawful manner. McClure, 188 Ill. 2d at 133-34 (Civil conspiracy is an intentional tort which requires proof of knowing and voluntary participation); Buckner, 182 Ill. 2d at 23-24; Adcock, 164 Ill. 2d at 62-63 (the agreement is a necessary and

important element of a civil conspiracy).  McClure provides further support for our conclusion because it holds that "[a]ccidental, inadvertent, or negligent participation in a common scheme does not amount to a conspiracy."  McClure, 188 Ill. 2d at 133-34.  Without alleging facts in the sixth amended complaint that Claire-Sprayway and Atofina agreed to participate in the alleged common scheme, Redelmann's allegations against them are equally susceptible to the characterization that they were parallel conduct.  As Claire-Sprayway and Atofina explain, there is nothing sinister in belonging to an industry trade organization, in the absence of an agreement to participate, because the following acts do not amount to clear and convincing circumstantial evidence of a civil conspiracy: the fact that Claire-Sprayway and Atofina (1) adopted the enforcement requirements of the steering committee, (2) may have failed to notify the EPA and other regulatory authorities of the dangers of exposure to hydrochloric acid and other chemicals, and (3) allegedly violated legislative enactments such as the Toxic Substances Control Act, the Emergency Planning and Community Right-To-Know Act, the Illinois Chemical Safety Act, and the Illinois Toxic Substances Disclosure to Employees Act. McClure, 188 Ill. 2d at 134.

We are similarly unpersuaded by Redelmann's argument that he alleged a conspiracy involving Claire-Sprayway in the sixth amended complaint because the trial court upheld the conspiracy count involving the company in the fifth amended complaint.  As previously indicated, Redelmann alleged in the fifth amended complaint that employees of Claire-Sprayway met with employees of the Chemical Specialties Manufacturers Association and "entered into a common scheme and agreement to create the Hydrogen Chloride Joint Venture for the purpose of misleading government regulators and evading governmental controls on hydrogen chloride."  The trial court upheld the conspiracy

count involving Claire-Sprayway in the fifth amended complaint. However, the aforementioned allegation against Claire-Sprayway is not included in the sixth amended complaint. Our courts have historically held that an amendment that is complete in itself, which does not refer to or adopt a prior pleading, supersedes it, and the original pleading ceases to be a part of the record, being in effect abandoned or withdrawn. Vincent v. Williams, 279 Ill. App. 3d 1, 6-7 (1996), citing W.P. Iverson & Co. v. Dunham Manufacturing Co., 18 Ill. App. 2d 404, 425-26 (1958). Accordingly, because Redelmann neither referred to the fifth amended complaint nor adopted it in the sixth amended complaint, we find that the trial court correctly treated the fifth amended complaint as abandoned and superseded by the sixth amended complaint and properly dismissed it. Vincent, 279 Ill. App. 3d at 6-7, citing W.P. Iverson & Co., 18 Ill. App. 2d at 425-26.

Discovery

Redelmann argues that the trial court erred when it failed to lift the stay on discovery and failed to order Claire-Sprayway and Atofina to comply with outstanding discovery. Redelmann argues that conspiracies tend to be shrouded in mystery and that Claire-Sprayway and Atofina owe discovery on issues he deems as "critical issues surrounding the conspiracy to conceal and affirmatively misstate the hazards of hydrogen chloride." Redelmann argues that the trial court should have ordered the defendants, including Claire-Sprayway and Atofina, to comply with discovery prior to ruling on the section 2-615 motion to dismiss.

Claire-Sprayway and Atofina argue that Redelmann has offered no reason why further discovery will provide factual support for his claim. Claire-Sprayway and Atofina argue that this issue is nothing more than a general belief that still more discovery will reveal evidence of a

conspiracy.

Discovery is authorized in the supreme court rules " 'regarding any matter relevant to the subject matter involved in the pending action.' " Computer Teaching Corp., v. Courseware Applications, Inc., 199 Ill. App. 3d 154, 157 (1990), quoting 107 Ill. 2d R. 201(b)(1). "Discovery is to be a mechanism for the ascertainment of truth and for the purpose of promoting either a fair settlement or a fair trial." Computer Teaching Corp., 199 Ill. App. 3d at 157, citing Pemberton v. Tieman, 117 Ill. App. 3d 502 (1983). Because discovery focuses on the relevance and materiality of both admissible materials as well as materials that lead to what would be admissible at trial, Illinois trial courts traditionally have been given great latitude in determining the scope of discovery. Computer Teaching Corp., 199 Ill. App. 3d at 157, citing Mistler v. Mancini, 111 Ill. App. 3d 228 (1982). "A trial court's discovery order is usually reviewed for an abuse of discretion." Wisniewski v. Kownacki, 221 Ill. 2d 453, 457 (2006), citing Norskog v. Pfiel, 197 Ill. 2d 60, 70 (2001).

The trial court stayed discovery pending the resolution of the section 2-615 motion to dismiss with a promise that discovery would resume once the parties were at issue on the pleadings. The trial court explained its reasoning, in the June 7, 2002, order that granted the section 2-615 motion to dismiss with prejudice that "Illinois remains a fact pleading jurisdiction and plaintiff must plead facts specific to the essential elements of his cause of action." Redelmann has failed to explain how discovery will help him overcome the pleading deficiencies in the sixth amended complaint. Redelmann has failed to allege an agreement between Claire-Sprayway, Atofina and the other defendants in which they agreed to participate in a conspiracy or common scheme. Because Redelmann failed to plead facts that establish all the elements in his conspiracy counts against Claire-

Sprayway and Atofina, the trial court was unwilling to permit him to go on a fishing expedition. We have considered Redelmann's argument that discovery was needed before ruling on the motion to dismiss and do not believe that the trial court's discovery ruling was a "manifest abuse of discretion." Computer Teaching Corp., 199 Ill. App. 3d at 157, citing M. Loeb Corp. v. Brychek, 98 Ill. App. 3d 1122 (1981).

Motion to Reconsider

Redelmann argues that the motion to dismiss BASF should not have been granted because it concealed the fact that it was a member of the CSMA and not a non-trade-group defendant. Redelmann also argues that the trial court failed to consider this evidence in ruling on the section 2-615 motion to dismiss.

Defendants argue that the trial court did not abuse its discretion in denying the motion to reconsider because Redelmann did not bring any newly discovered evidence to the trial court's attention but simply raised this issue in his reply brief because he had previously failed to raise it before the trial court. Defendants also argue that Redelmann has no basis for claiming that the trial court never considered the issue at the motion-to-reconsider stage because the trial court expressly indicated that it was ruling on the motion "after full consideration of all written submissions in support of plaintiff's motion." Defendants also argue that it is a mischaracterization for Redelmann to argue that BASF was identified as a non-trade-group defendant. According to the defendants, BASF joined the non-trade group defendants' motion because it raised a similar argument, namely that it assisted, enabled, and furthered the alleged conspiracy. Defendants argue that BASF was similarly situated with the non-trade-group defendants but was not necessarily one of them.

Defendants argue that whether BASF was a part of the at-large membership of the CSMA is irrelevant because Redelmann does not allege that BASF was a member of the steering committee which would make it an active participant in the alleged agreement underlying the conspiracy. Therefore, the defendants argue that BASF was properly identified as a party that joined the non-trade group defendants' motion. The defendants further argued that no harm came to Redelmann by the dismissal of BASF because, in addition to the June 7, 2002, order, which was the subject of the motion to reconsider, BASF was dismissed with prejudice on other grounds in the May 10, 2002, order.

A motion to reconsider is reviewed under a standard that is well settled:

> " ' "The purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence which was not available at the time of the hearing, changes in the law or errors in the court's previous application of existing law. [Citation.] As a general rule a motion to reconsider is addressed to the trial court's sound discretion. [Citation.]" ' " <u>Duresa v. Commonwealth Edison Co.</u>, 348 Ill. App. 3d 90, 97 (2004), quoting <u>Sacramento Crushing Corp. v. Correct/All Sewer, Inc.</u>, 318 Ill. App. 3d 571, 577 (2000).

Accordingly, we review the denial of a motion to reconsider to determine if there was an abuse of the trial court's discretion. <u>In re Application of the County Collector</u>, 343 Ill. App. 3d 363, 371 (2003). Despite the fact that Redelmann raised this issue for the first time in a reply brief concerning his motion to reconsider, there is nothing to indicate that the trial court declined to consider it. On the

contrary, the trial court expressly indicated that the motion to reconsider was ruled upon only "after full consideration of <u>all written submissions</u> in support of plaintiff's motion." (Emphasis added.) We do not consider the trial court's ruling to be a refusal by the trial court to consider Redelmann's argument despite the fact it was raised late in the pleading process. Most importantly, our review of the record does not reveal that Redelmann's motion to reconsider or reply brought any newly discovered evidence to the trial court's attention or changes in the law or errors in the court's application of the law. Accordingly, we find the trial court's denial of the motion to reconsider was not an abuse of discretion. <u>Duresa</u>, 348 Ill. App. 3d at 97; <u>County Collector</u>, 343 Ill. App. 3d at 371.

CONCLUSION

In light of the foregoing, we affirm the trial court's May 10, 2002, order and the June 7, 2002, order granting the defendants' section 2-615 motions to dismiss with prejudice.

Appeal No. 1-02-3220, Affirmed.

Appeal No. 1-02-3221, Affirmed.

QUINN, P.J., and MURPHY, J., concur.