No. 2—09—1234
Opinion filed March 31, 2011

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| TIMOTHY WHELAN LAW ASSOCIATES, LTD., | ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiff and Counterdefendant-Appellee and Cross-Appellant, | ) ) | |
| | ) | |
| v. | ) | No. 09—AR—182 |
| | ) | |
| | ) | |
| FRANK KRUPPE, JR., | ) | |
| | ) | Honorable |
| Defendant and Counterplaintiff-Appellant and Cross-Appellee. | ) ) | Bruce R. Kelsey, Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices Hutchinson and Zenoff concurred in the judgment and opinion.

**OPINION**

Plaintiff, Timothy Whelan Law Associates, Ltd., filed a breach-of-contract action against defendant, Frank Kruppe, Jr., attempting to collect fees allegedly due for its representation of defendant. Following a jury trial, judgment was entered in favor of plaintiff for $30,339.14, and the trial court subsequently awarded plaintiff an additional $19,660.86, for a total award of $50,000. Defendant now appeals, raising a number of issues. First, defendant argues that a provision in the contract, which allowed plaintiff to collect attorney fees incurred in collecting earlier attorney fees, was against public policy. Second, defendant alleges error in the trial court's decision to dismiss his

counterclaims for malpractice and breach of contract. Third, defendant complains of a number of evidentiary rulings by the trial court. Fourth, he contends that the jury's verdict is contrary to the manifest weight of the evidence. Plaintiff has also filed a cross-appeal, in which it asserts that the trial court erred in determining that its authority to enter an award in favor of plaintiff was limited by supreme court and local rule to $50,000. For the reasons that follow, we reverse and remand for a new trial. A number of issues, though not dispositive of this appeal, are likely to recur following remand, so we will address them here.

Plaintiff's representation of defendant primarily concerned shareholder litigation stemming from defendant's involvement in two corporations, Shank Screw Products, Inc., and the Cyrus Shank Company. Defendant owned 22% of the corporations, his brother Robert also owned 22%, and 56% was held by a trust. Defendant and his brother became involved in a dispute over control of the corporations. Plaintiff represented defendant with respect to this dispute. On plaintiff's advice, another attorney, Bill Churney, was retained to assist plaintiff with certain aspects of the case. Defendant terminated plaintiff on December 21, 2006, informing him that Churney would be taking over the case. A dispute over attorney fees owed to plaintiff developed, and this action ensued. As the issues are largely discrete, we will discuss additional evidence as it pertains to them. We now turn to the merits of the parties' various contentions.

I. WHETHER THE PARTIES' FEE AGREEMENT WAS AGAINST PUBLIC POLICY

Defendant first contends that a provision in the fee agreement between him and plaintiff violated public policy. Specifically, defendant complains of the following provision: "In the even [*sic*] it becomes necessary to bring a collection proceeding against you for nonpayment of fees and costs, I may include reasonable attorney fees and cost [*sic*] in those proceedings." In this case, the jury first

awarded plaintiff $30,339.14, and the trial court then awarded plaintiff an additional $19,660.86 based upon this provision.

Whether a provision of a contract violates public policy is a question of law subject to *de novo* review. *In re Marriage of Rife*, 376 Ill. App. 3d 1050, 1054 (2007). When the resolution of an issue turns upon public policy, it is not the role of a court to make policy; rather, the court must ascertain the public policy of this state with reference to the Illinois Constitution, statutes, and long-standing case law. *In re Estate of Feinberg*, 235 Ill. App. 3d 256, 265 (2009). Defendant believes he has found such a manifestation of public policy in *Lustig v. Horn*, 315 Ill. App. 3d 319 (2000).

In *Lustig*, as in this case, an attorney sued his former client to recover attorney fees from an earlier representation as well as the fees and costs of the collection proceeding. The retainer agreement between the parties included the following provision: "[I]n the event of default in payment Client will pay reasonable attorney's fees and costs incurred in collecting said amount which may be due." (Emphasis and internal quotation marks omitted.) *Lustig*, 315 Ill. App. 3d at 321. Defendant relies primarily on the following passage from *Lustig*, 315 Ill. App. 3d at 327:

"An attorney should not place himself in the position where he may be required to choose between conflicting duties or where he must reconcile conflicting interests rather than protect fully the rights of his client. [Citations.] In the instant case, paragraph 3 of the retainer agreement anticipates suit against and recovery of additional fees from a client should that client fail to pay the bill within the time required. As evidenced from Lustig's conduct, paragraph 3 gives rise to substantial fees for vigorous prosecution of the attorney's own client. As Horn aptly points out, this provision very well could be used to silence a client's complaint about fees, resulting from the client's fear of his attorney's retaliation for

nonpayment of even unreasonable fees. Such a provision is not necessary to protect the attorney's interests; on the contrary, it merely serves to silence a client should that client protest the amount billed."

As defendant further points out, the *Lustig* court also commented that "such a provision clearly is unfair and potentially violative of the Rules of Professional Conduct barring an attorney from representing a client if such representation may be limited by the attorney's own interest." *Lustig*, 315 Ill. App. 3d at 327. While this passage, read in isolation, would seem to stand for the proposition that an attorney may never collect fees or costs when prosecuting an action for earlier fees and costs arising out of the representation of a client, a full reading of *Lustig* reveals several significant and relevant differences between it and the present case.

Notably, by the time the client in *Lustig* signed the retainer agreement, an attorney-client relationship already existed between the parties. *Lustig*, 315 Ill. App. 3d at 322. Under such circumstances, the potential for overreaching on the part of an attorney is much greater than before the relationship commences, when the client is free to simply walk away. See *Lustig*, 315 Ill. App. 3d at 326. Because an attorney-client relationship is fiduciary (*Lustig*, 315 Ill. App. 3d at 325-26), the *Lustig* court emphasized that "[p]articular attention will be given to contracts made or changed after the relationship of attorney and client has been established" (*Lustig*, 315 Ill. App. 3d at 326). Indeed, "[a] presumption of undue influence arises when an attorney enters into a transaction with his client during the existence of the fiduciary relationship." *Lustig*, 315 Ill. App. 3d at 326. The burden is on the attorney to rebut this presumption by clear and convincing evidence. *Lustig*, 315 Ill. App. 3d at 326 (citing *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 464-65 (1983)). To rebut this presumption, the *Lustig* court continued, the attorney would have to show that

"(1) he made a full and fair disclosure to [his client] of all the material facts affecting the transaction and (2) the transaction was fair." *Lustig*, 315 Ill. App. 3d at 327. Initially, the court noted that there was little evidence indicating that the attorney explained the implications of the provision at issue in that case to his client. *Lustig*, 315 Ill. App. 3d at 327. Subsequently, the court held that the transaction could not be deemed fair, and, in support, it set forth the paragraph upon which defendant here relies (which we set forth above).

Thus, it is abundantly clear that the matter upon which defendant relies was part of the *Lustig* court's determination that the attorney failed to rebut the presumption of undue influence that arose because he represented the client when the agreement was consummated. That is not the case here. Defendant asserts that the *Lustig* court never expressly limited its holding to the facts of that case. While true, as we read *Lustig*, it is not possible to divorce the paragraph upon which defendant relies from the discussion of undue influence. Thus, we reject defendant's characterization of and reliance upon *Lustig* as establishing a *per se* rule against a fee agreement containing a provision like the one at issue in the present case. We conclude that there is no such general proscription. Accordingly, at least to the extent that plaintiff is represented by outside counsel (see *In re Marriage of Tantiwongse*, 371 Ill. App. 3d 1161, 1164-65 (2007) (holding that attorneys do not incur fees when they represent themselves)), we perceive no *per se* public policy that would void the provision in the fee agreement regarding the recovery of fees.

## II. WHETHER THE TRIAL COURT ERRED IN DISMISSING DEFENDANT'S COUNTERCLAIMS

Defendant next argues that the trial court should not have dismissed his counterclaims for failing to state a claim. See 735 ILCS 5/2—615 (West 2006). We review *de novo* a trial court's

dismissal of a claim. *Westfield Insurance Co. v. Birkey's Farm Store, Inc.*, 399 Ill. App. 3d 219, 231 (2010). To set forth an action for legal malpractice, a plaintiff must plead: "(1) the existence of an attorney-client relationship which establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause establishing that 'but for' the attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) damages." *Ignarski v. Norbut*, 271 Ill. App. 3d 522, 525 (1995). Initially, we note that, after setting forth a number of potential breaches of duty, defendant simply states that "[t]he facts are self evident" and that his allegations are "sufficient to establish a breach of duty." On appeal, however, the appellant bears the burden of supporting his contentions with citations to relevant authority. See Ill. S. Ct. R. 341(h)(7) (eff. May 1, 2007). The absence of such citations to authority would be enough to resolve this issue against defendant. See *People v. Universal Public Transportation, Inc.*, 401 Ill. App. 3d 179, 197-98 (2010).

Moreover, defendant's allegations regarding proximate cause are insufficient. Defendant's allegations concern plaintiff's purported failure to adequately oppose the issuance of a temporary restraining order (TRO), which, defendant claims, allowed two employees to misappropriate funds. The TRO prevented defendant from exercising control over the two corporations, which, presumably, would have placed him in a position to prevent the alleged theft. Regarding proximate cause, defendant simply alleged that but for plaintiff's negligence the TRO would not have been issued and that defendant was forced to pay another attorney to have the TRO dissolved. What is missing is any explanation of how plaintiff would have successfully opposed the issuance of the TRO. The mere fact that plaintiff neglected to file a response to the petition for the TRO would have caused damages to defendant only if some meritorious response was possible. See *Governmental Interinsurance*

*Exchange v. Judge*, 221 Ill. 2d 195, 221 (2006) ("[H]ad defendants perfected the appeal in the underlying case, the appellate court would not have reversed the judgment based on section 3—104; and, therefore, defendants' negligence in failing to perfect the appeal was not the proximate cause of plaintiff's injury."); *Claire Associates v. Pontikes*, 151 Ill. App. 3d 116, 122 (1986) ("In the terms chosen by the litigants herein, a legal-malpractice claim is a 'case within a case.' This is because of the damages element of the action; no malpractice exists unless counsel's negligence has resulted in the loss of an underlying cause of action or the loss of a meritorious defense if the attorney was defending in the underlying suit.").

We further note that, before this court, defendant argues that "it is also clear from the Amended Counterclaim [*sic*] that [plaintiff] probably could not have succeeded in the temporary restraining order hearing because no answer was filed." It is not enough to plead that plaintiff *could not* succeed in defending against the TRO absent an answer. The mere filing of an answer would not have guaranteed success. A cause of action for legal malpractice requires that defendant "*would have* prevailed in the underlying action." (Emphasis added.) *Ignarski*, 271 Ill. App. 3d at 525. Thus, defendant needed to plead that plaintiff *would have* been able to successfully oppose the TRO if it had filed an answer, not simply that it could not succeed without filing one. As defendant failed to adequately plead proximate cause, we find that the trial court's decision to dismiss his claim for legal malpractice was not error.

As for the breach-of-contract claim, defendant was required to plead the existence of a contract; that he performed his obligation under the contract; a breach by plaintiff; and damages. *International Supply Co. v. Campbell*, 391 Ill. App. 3d 439, 450 (2009). Moreover, it has been held that, "[t]o state a sufficient cause of action for legal malpractice in tort or contract, the plaintiff must

plead facts establishing that the breach was the proximate cause of the alleged damages." *Radtke v. Murphy*, 312 Ill. App. 3d 657, 665 (2000). This is because legal-malpractice claims blur the distinction between tort and contract. See *Collins v. Reynard*, 154 Ill. 2d 48, 50 (1992). Thus, defendant's contract claim fails for the same reason his tort claim did—failure to adequately allege proximate cause.

Defendant offers no sustained argument regarding the dismissal of his affirmative defenses; accordingly, we will not address this issue. See *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993) ("A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented [citation], and it is not a repository into which an appellant may foist the burden of argument and research ***."). Having rejected defendant's arguments regarding his counterclaims and affirmative defenses, we now proceed to his next argument.

### III. EVIDENTIARY RULINGS

Defendant next complains of several of the trial court's evidentiary rulings. He argues that the trial court's erroneous evidentiary rulings resulted in the jury's verdict being contrary to the manifest weight of the evidence. However, evidentiary errors are generally remedied by ordering a new trial. See, *e.g.*, *Bargman v. Economics Laboratory, Inc.*, 181 Ill. App. 3d 1023, 1034 (1989). We will not strike any improperly admitted evidence, reweigh the balance of the evidence, and render a decision. Evidentiary rulings are reviewed for an abuse of the trial court's discretion. See, *e.g.*, *Matthews v. Aganad*, 394 Ill. App. 3d 591, 597 (2009). Hence, we will examine defendant's arguments, but we deem the proper remedy, should a remedy be necessary, to be a new trial. Defendant identifies five potential errors: (1) the admission of undisclosed opinion testimony; (2) the admission of evidence that defendant failed to pay on professional contracts unrelated to this case;

(3) the exclusion of his testimony that time plaintiff billed for various services was excessive; (4) the admission of evidence that plaintiff represented defendant in a criminal matter; and (5) the admission of evidence concerning the gross sales of the two corporations. We will address these in turn.

## A. Undisclosed Opinion Testimony

Defendant argues that the trial court erred in permitting Timothy Whelan and Gary Fernandez to testify regarding the reasonableness of plaintiff's fees. Fernandez is an accountant and attorney who shares office space with plaintiff. Illinois Supreme Court Rule 213(f) provides, in pertinent part:

"Upon written interrogatory, a party must furnish the identities and addresses of witnesses who will testify at trial and must provide the following information:

(1) *Lay Witnesses.* A 'lay witness' is a person giving only fact or lay opinion testimony. For each lay witness, the party must identify the subjects on which the witness will testify. An answer is sufficient if it gives reasonable notice of the testimony, taking into account the limitations on the party's knowledge of the facts known by and opinions held by the witness.

(2) *Independent Expert Witnesses.* An 'independent expert witness' is a person giving expert testimony who is not the party, the party's current employee, or the party's retained expert. For each independent expert witness, the party must identify the subjects on which the witness will testify and the opinions the party expects to elicit. An answer is sufficient if it gives reasonable notice of the testimony, taking into account the limitations on the party's knowledge of the facts known by and opinions held by the witness.

(3) *Controlled Expert Witnesses.* A 'controlled expert witness' is a person giving expert testimony who is the party, the party's current employee, or the party's retained expert. For each controlled expert witness, the party must identify: (i) the subject matter on which the witness will testify; (ii) the conclusions and opinions of the witness and the bases therefor; (iii) the qualifications of the witness; and (iv) any reports prepared by the witness about the case." Ill. S. Ct. R. 213(f) (eff. Jan. 1, 2007).

We will disturb a trial court's determination regarding compliance with this rule only if an abuse of discretion has occurred. *Bauer ex rel. Bauer v. Memorial Hospital*, 377 Ill. App. 3d 895, 914 (2007). An abuse of discretion occurs when no reasonable person could agree with the trial court. *Davis v. Kraff*, 405 Ill. App. 3d 20, 28 (2010).

Plaintiff made the following disclosures regarding the facts and opinions to which Whelan would testify:

"Whelan may be called to testify about the following matters: The existence of contract(s) between the parties, the services rendered and/or materials provided to Frank Kruppe by the Plaintiff, damages incurred by the Plaintiff and communications between the parties."

Plaintiff also disclosed that Whelan would "testify regarding the services performed for the client and monthly billing."

Regarding Fernandez, plaintiff disclosed the following:

"Gary Fernandez may testify about the following: the facts and terms of the agreement between [plaintiff and defendant]; the existence of a contract between them; discussion of legal issues involved in the allegations of the amended complaint and the answers thereto; the

time that [plaintiff] expended in the provision of legal services to [defendant] during [the] September 2006 to January 2007 time period; oral statements by [defendant] that there was no record of theft by company employees, the Brandners; delay in payment of fees for accounting due Fernandez by [defendant] for accounting assistance in the Cook County litigation."

Additionally, plaintiff disclosed that Fernandez would "testify regarding the services performed for the client." Finally, plaintiff also made this disclosure:

"Gary J. Fernandez *** will testify to assistance in this litigation and the accounting he performed as a CPA as well as [defendant's] refusal to pay his professional fees and [defendant's] conversation with him admitting there was no damage to the company during the period of the TRO."

Thus, there was no explicit disclosure that either witness would testify regarding whether the fees charged by plaintiff were reasonable or customary. Whelan in fact testified that the rates charged by his firm were reasonable and that the services he provided were necessary. He also testified to the customary rate in Du Page and Cook Counties. Fernandez testified to the customary rate that attorneys charge in Cook County.

As a threshold matter, we conclude that the opinions at issue here were the subject of expert rather than lay testimony. Expert testimony concerns matters that implicate specialized knowledge. *Todd W. Musburger, Ltd. v. Meier*, 394 Ill. App. 3d 781, 800 (2009). The value of legal services is a subject that requires such knowledge. See *In re Marriage of Salata*, 221 Ill. App. 3d 336, 338-39 (1991) ("Generally then, case law establishes that the reasonableness of an attorney's fees must be shown by expert testimony either by the petitioning attorney, an outside attorney or both."). We

further note that the parties treat Fernandez as an independent expert witness, and we will do so as well.

We begin with Whelan's testimony. Plaintiff points out that it disclosed that Whelan would testify regarding the existence of a contract between plaintiff and defendant, the nature of the services provided, and the damages it incurred as a result. The damages, according to plaintiff, are the value of the legal services that defendant received. An opinion may be admitted if it is encompassed by its proponent's disclosure. *Bachman v. General Motors Corp.*, 332 Ill. App. 3d 760, 800 (2002); *Prairie v. Snow Valley Health Resources, Inc.*, 324 Ill. App. 3d 568, 576 (2001) ("Opinion testimony is 'limited to comments within the scope of and consistent with the facts and opinions disclosed in discovery.' ") (quoting *Parker v. Illinois Masonic Warren Bar Pavilion*, 299 Ill. App. 3d 495, 501 (1998)). Keeping in mind that we are applying an abuse-of-discretion standard of review (*Brdar v. Cottrell, Inc.*, 372 Ill. App. 3d 690, 700 (2007)), we find no reversible error in the trial court's decision here. As noted, doing so would require us to find that no reasonable person could agree with the trial court's decision. *Davis*, 405 Ill. App. 3d at 28. Quite simply, a reasonable person could conclude that plaintiff's disclosure that Whelan would testify about the damages that plaintiff incurred did encompass opining that its legal fees were reasonable. That is, after all, an essential element of proving damages. *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 983 (1987). We therefore find no error in this portion of the trial court's ruling.

Regarding Fernandez, we arrive at a different conclusion. Plaintiff points to its disclosure that Fernandez would testify regarding the time that plaintiff spent providing legal services to defendant. We do not see how this disclosure can be read to encompass Fernandez's testimony regarding the customary rate that attorneys charge in Cook County. Plaintiff also points out that it disclosed that

Fernandez would testify as an expert in the proceedings. This is immaterial, as Rule 213(f)(2) requires that a party disclose the subjects upon which such an expert will testify as well as the opinions the party expects to elicit. Ill. S. Ct. R. 213(f)(2) (eff. Jan. 1, 2007). That plaintiff intended to call Fernandez as an expert witness says nothing about what Fernandez would opine. In sum, we are compelled to conclude that the trial court abused its discretion regarding Fernandez's testimony. This portion of its decision was erroneous. Errors regarding Rule 213(f) are amenable to a harmless-error analysis. However, because we are reversing and remanding on a different basis, we need not address prejudice with respect to this argument and have addressed it merely should it recur on retrial.

### B. Alleged Unrelated Misconduct

Defendant next contends that the trial court erred by allowing plaintiff to present testimony that defendant failed to pay other professionals for their services. Specifically, Whelan testified that plaintiff had represented defendant in defense of a fee petition brought by another law firm and that defendant did not want to pay another attorney. Additionally, Fernandez testified that he had not been paid for services rendered to defendant. The trial court asked, "So tell me why should I allow this to come forward if it doesn't show a course of conduct or, in fact, it supports his position which is that not all professionals bill properly." The trial court further questioned, "Because if it's a course of [*sic*] pattern and effect that he doesn't pay until he gets sued, isn't that relevant to the issue of why he is not paying [plaintiff]?" The trial court then explained its ruling: "I think it's highly relevant. I think the jury wants to hear the credibility of your client as well as Mr. Whelan, and this case is about credibility." Defendant's attorney then stated that he believed this evidence was "highly prejudicial." The trial court responded, "Of course it is."

It is axiomatic that "[e]vidence of specific prior bad acts unrelated to a material issue is prohibited." *Sharma v. Zollar*, 265 Ill. App. 3d 1022, 1025 n.4 (1994) (citing *Fugate v. Sears, Roebuck & Co.*, 12 Ill. App. 3d 656 (1973)). While this rule is more commonly encountered in criminal cases, it applies in civil cases as well. See, *e.g.*, *Doe v. Lutz*, 281 Ill. App. 3d 630, 637-38 (1996). *Plooy v. Paryani*, 275 Ill. App. 3d 1074, 1088-89 (1995), involved a suit between a cab driver and a customer who were involved in an altercation. The court held that evidence that the cab driver had been involved in disputes with other customers and drivers was inadmissible. *Plooy*, 275 Ill. App. 3d at 1089. The court explained, "Evidence of misconduct other than that in issue is not properly admissible to establish a person's disposition to behave in a certain way." *Plooy*, 275 Ill. App. 3d at 1089; see also *Doe*, 281 Ill. App. 3d at 642 ("As previously discussed, evidence of prior bad acts is not admissible to show a defendant's character or propensity to commit the alleged crime.").

The trial court's justification for admitting the evidence was erroneous. The trial court believed that this evidence showed a "course or pattern" of behavior. Showing a pattern of behavior—often referred to as a *modus operandi*—is a proper basis for the admissibility of such evidence only if identity is at issue. See *People v. Barbour*, 106 Ill. App. 3d 993, 1000 (1982). Another possible analog would be the common-design exception; however, that requires that the earlier bad acts be part of a single larger scheme. *People v. Walston*, 386 Ill. App. 3d 598, 606 (2008). There is no indication that defendant's purported earlier failure to pay other professionals was part of such an enterprise. We also fail to see how the failure to pay other professionals could have motivated defendant to not pay plaintiff.

Instead, the only possible relevance we see for this evidence is to impugn defendant's character in an attempt to show that he acted in conformity therewith when he allegedly declined to pay plaintiff for its services. That, however, is not a permissible purpose for admitting such evidence. *Village of Kildeer v. Munyer*, 384 Ill. App. 3d 251, 255 (2008); *Clemons v. Mechanical Devices Co.*, 292 Ill. App. 3d 242, 256 (1997) (Cook, J., dissenting). In criminal cases, the danger that evidence of other bad acts is likely to overpersuade the fact finder and lead to a conviction by causing the fact finder to dislike the defendant is well recognized. *E.g.*, *People v. Manning*, 182 Ill. 2d 193, 213-14 (1998); *People v. Hensley*, 354 Ill. App. 3d 224, 232 (2004). The same danger is present here. Thus, the trial court abused its discretion in permitting the admission of this evidence

Further, defendant was prejudiced by the error. In responding to defendant's final argument, regarding the manifest weight of the evidence, plaintiff identifies several conflicts in the evidence. In support of the jury's verdict, plaintiff then argues that "the jury determined that Whelan was the more credible witness [rather than defendant] and that [plaintiff] was entitled to the fees and costs requested." Given plaintiff's acknowledgment of the role that credibility played in the trial below, the fact that the jury was assessing defendant's credibility in light of a number of inadmissible other bad acts leads us to the conclusion that their admission was prejudicial. Accordingly, we reverse the judgment of the trial court and remand this matter for a new trial.

### C. Reasonableness of Time Spent by Plaintiff on Various Tasks

Defendant next argues that the trial court erred in barring him from testifying and arguing that the amount of time that plaintiff spent on various tasks that it included in its billing was unreasonable. Defendant claims that matters such as how long it takes to write a letter are within the common sense of a jury. He further argues that he should have been allowed to argue that time spent researching

and drafting various legal documents—such as a motion to dismiss—was something the jurors could assess "[b]ased on their own experiences." Initially, we note that defendant cites nothing to support his contention that such matters are within the competence of laypersons, thus forfeiting the issue. *Britt v. Federal Land Bank Ass'n of St. Louis*, 153 Ill. App. 3d 605, 608 (1987). Similarly, defendant cites nothing that would indicate that the trial court abused its discretion by concluding otherwise.

Moreover, we find these contentions by defendant unpersuasive. As noted, the standard of review is abuse of discretion. *Matthews*, 394 Ill. App. 3d at 597. Thus, we would have to find that no reasonable person could agree with the trial court before we could reverse its decision. *Davis*, 405 Ill. App. 3d at 28. Regarding this issue, we have no difficulty in finding that what it takes to draft a legal document is a matter beyond the competence of people who are not legal professionals. While drafting a letter might be a closer question, we simply cannot say that no reasonable person could adopt the position taken by the trial court. Accordingly, we find no error here.

### D. Plaintiff's Representation of Defendant in a Criminal Matter

Defendant next complains that the trial court permitted testimony regarding plaintiff's representation of defendant in a criminal matter. Defendant argues that the criminal matter was not mentioned in plaintiff's pleadings and that therefore any evidence regarding plaintiff's representation of him in the criminal case was irrelevant. Defendant cites *In re J.B.*, 312 Ill. App. 3d 1140, 1143 (2000), which holds that "[a]ny proof presented to the court that is not supported by proper pleadings is as defective as pleading a claim that is not supported by proof." Whether a matter is within the scope of the pleadings is a matter committed to the discretion of the trial court. See *Sullivan v. Berardi*, 80 Ill. App. 3d 417, 421-22 (1980) ("We believe the theories of recovery had an adequate basis in the pleadings and that the court acted within the scope of its discretion in deciding the issues

on the basis of the pleadings and evidence."). Here, we believe the trial court properly exercised its discretion in permitting this testimony.

It was plaintiff's position that, while it was primarily representing defendant on litigation involving the two corporations, defendant requested that it perform additional legal services in the criminal matter while this litigation was ongoing. Plaintiff suggested that it was not uncommon for a client to come to his or her attorney with unrelated legal matters during the course of a representation. The trial court apparently accepted this argument, and we cannot say that the trial court's decision was such that no reasonable person could agree with it. Accordingly, we find no error here. Defendant also argues that reference to the criminal case was prejudicial; however, that argument is unsupported by authority and therefore forfeited. See *Obert*, 253 Ill. App. 3d at 682.

### E. Gross Sales of the Corporations

Defendant complains that the trial court permitted plaintiff's counsel to elicit testimony from defendant's son regarding the gross sales of the corporations. He asserts that this evidence could serve only to improperly emphasize defendant's wealth and suggest he had the ability to pay a judgment. See *Stathis v. Geldermann, Inc.*, 295 Ill. App. 3d 844, 862 (1998). Plaintiff responds that defendant opened the door to this testimony. During the trial, Whelan explained the services that plaintiff provided to defendant. As part of this testimony, he described the nature of the corporations' business as well as their size. In the course of this testimony, Whelan testified generally to the gross sales of the corporations from 2004 to 2006. The size of the corporations, one measure of which is gross sales, bears arguable relevance to the nature of the representation rendered by plaintiff. Further, prior to eliciting testimony from defendant's son regarding the gross sales of the corporations, defendant's son testified that the corporations were "very small." The trial court could reasonably

conclude that this opened the door to questioning defendant's son about gross sales to rebut the notion that the corporations were "very small." As there are colorable bases for the trial court's ruling, we cannot say that the trial court abused its discretion here.

## IV. MANIFEST WEIGHT OF THE EVIDENCE

Finally, defendant argues that the jury's verdict was contrary to the manifest weight of the evidence and that he therefore is entitled to judgment notwithstanding the verdict, a new trial, or a remittitur. A factual finding is contrary to the manifest weight of the evidence only if an opposite conclusion is clearly apparent. *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). After reviewing defendant's arguments, we conclude that such is not the case here.

Defendant identifies five issues upon which he contends the jury came to the incorrect conclusion. First, he contends that "no evidence was presented that the handling of any criminal matter was part of the contract issue in this case." This is merely a reiteration of defendant's admissibility argument on this issue, which we have already rejected. Second, he points to the testimony of his son regarding the length of certain meetings he had with counsel. His son testified that they were not as long as plaintiff billed for them. This merely created a conflict in the evidence, the resolution of which was primarily a matter for the jury. *Pavnica v. Veguilla*, 401 Ill. App. 3d 731, 738 (2010). Defendant does not explain the legal basis of his third and fourth contentions, but they appear to be related to his first argument regarding public policy, which we also have previously rejected. Fifth, he argues that Whelan was not credible, as demonstrated by his desire to borrow $10,000 from defendant. Defendant contends that this showed that Whelan was determined to "get this money from his client—one way or the other." Credibility is also a matter primarily for the jury. *Pavnica*, 401 Ill. App. 3d at 738. Having rejected defendant's individual assertions, we perceive no

basis for us to conclude that the jury's verdict is contrary to the manifest weight of the evidence. Before closing this section, we further note that defendant does not support this argument with citation to pertinent authority, forfeiting the issue in any event. See *Obert*, 253 Ill. App. 3d at 682.

### V. PLAINTIFF'S CROSS-APPEAL

In its cross-appeal, plaintiff contends that the trial court erroneously concluded that it had the authority to award plaintiff only up to $50,000. Questions concerning the authority of a court present issues of law subject to *de novo* review. See *Grate v. Grzetich*, 373 Ill. App. 3d 228, 231 (2007). Similarly, resolution of this issue requires us to construe two court rules, which present issues of law as well. See *Coleman v. Akpakpan*, 402 Ill. App. 3d 822, 826 (2010).

The following facts are pertinent to this portion of this appeal. The parties agreed that, following the jury's verdict, the trial court would decide the issues of any fees and costs that plaintiff would receive for prosecuting the instant action. Based on the provision in the retainer agreement stating, "In the even [*sic*] it becomes necessary to bring a collection proceeding against you for nonpayment of fees and costs, I may include reasonable attorney fees and cost [*sic*] in those proceedings," plaintiff sought fees of $29,122.50. The trial court found that plaintiff was entitled to $21,250. However, it also found that it was subject to a jurisdictional limit whereby it could award only up to $50,000. Thus, the trial court subtracted the amount awarded pursuant to the jury's verdict ($30,339.14) from $50,000 and determined that it could award only an additional $19,660.86. It entered an additional judgment accordingly.

The rules upon which the trial court relied in finding that it was limited in the amount it could award were Illinois Supreme Court Rule 86 (Ill. S. Ct. R. 86 (eff. Jan. 1, 1994)) and Rule 13.01 of

the Eighteenth Judicial Circuit (18th Judicial Cir. Ct. R. 13.01 (Jan. 23, 2006)). Illinois Supreme Court Rule 86 provides:

"Rule 86. Actions Subject to Mandatory Arbitration

(a) Applicability to Circuits. Mandatory arbitration proceedings shall be undertaken and conducted in those judicial circuits which, with the approval of the Supreme Court, elect to utilize this procedure and in such other circuits as may be directed by the Supreme Court.

(b) Eligible Actions. A civil action shall be subject to mandatory arbitration if each claim therein is exclusively for money in an amount or of a value not in excess of the monetary limit authorized by the Supreme Court for that circuit or county within that circuit, exclusive of interest and costs.

(c) Local Rules. Each judicial circuit court may adopt rules for the conduct of arbitration proceedings which are consistent with these rules and may determine which matters within the general classification of eligible actions shall be heard in arbitration.

(d) Assignment from Pretrials. Cases not assigned to an arbitration calendar may be ordered to arbitration at a status call or pretrial conference when it appears to the court that no claim in the action has a value in excess of the monetary limit authorized by the Supreme Court for that circuit or county within that circuit, irrespective of defenses.

(e) Applicability of Code of Civil Procedure and Rules of the Supreme Court. Notwithstanding that any action, upon filing, is initially placed in an arbitration track or is thereafter so designated for hearing, the provisions of the Code of Civil Procedure and the rules of the Supreme Court shall be applicable to its proceedings except insofar as these rules otherwise provide." Ill. S. Ct. R. 86 (eff. Jan. 1, 1994).

Also relevant here is Illinois Supreme Court Rule 92(b), which states:

"The panel shall make an award promptly upon termination of the hearing. The award shall dispose of all claims for relief. The award may not exceed the monetary limit authorized by the Supreme Court for that circuit or county within that circuit, exclusive of interest and costs. The award shall be signed by the arbitrators or the majority of them. A dissenting vote without further comment may be noted. Thereafter, the award shall be filed immediately with the clerk of the court, who shall serve notice of the award, and the entry of the same on the record, to other parties, including any in default." Ill. S. Ct. R. 92(b) (eff. Jan. 1, 1994).

Finally, Illinois Supreme Court Rule 93(a) provides:

"Within 30 days after the filing of an award with the clerk of the court, and upon payment to the clerk of the court of the sum of $200 for awards of $30,000 or less or $500 for awards greater than $30,000, any party who was present at the arbitration hearing, either in person or by counsel, may file with the clerk a written notice of rejection of the award and request to proceed to trial, together with a certificate of service of such notice on all other parties. The filing of a single rejection shall be sufficient to enable all parties except a party who has been debarred from rejecting the award to proceed to trial on all issues of the case without the necessity of each party filing a separate rejection. The filing of a notice of rejection shall not be effective as to any party who is debarred from rejecting an award." Ill. S. Ct. R. 93(a) (eff. Jan. 1, 1997).

The question before us requires that we consider these rules.

Court rules are interpreted in the same manner as statutes. See *People v. Calabrese*, 398 Ill. App. 3d 98, 120 (2010) ("We interpret supreme court rules in the same manner as statutes, applying

-21-

the cardinal rule of construction in which we ascertain and give effect to the intent of the drafter, using the plain and ordinary language of the rule."). Thus, our primary goal is to ascertain and give effect to the intent of the drafter of the rule. *Stemple v. Pickerill*, 377 Ill. App. 3d 788, 792 (2007). The best indication of the drafter's intent is the plain language of the rule itself. *Whitledge v. Klein*, 348 Ill. App. 3d 1059, 1062 (2004). Where the language of a rule is clear as written, it must be applied without reading into it any conditions, exceptions, or limitations not expressed by the drafter. *Melrose Park Sundries, Inc. v. Carlini*, 399 Ill. App. 3d 915, 920 (2010).

In this case, the plain language of the various rules indicates that the trial court's authority to enter an award is not limited to any particular amount. Illinois Supreme Court Rule 86 allows cases involving claims for not more than an amount set by local rule (here $50,000) to be ordered to arbitration. Ill. S. Ct. R. 86 (eff. Jan. 1, 1994). Illinois Supreme Court Rule 92(b) expressly makes that limit applicable to awards entered by arbitrators. Ill. S. Ct. R. 92(b) (eff. Jan. 1, 1994). Illinois Supreme Court Rule 93(a), which controls what happens following the rejection of an award, contains no similar limitation. See Ill. S. Ct. R. 93(a) (eff. Jan. 1, 1997). As such, the monetary limitation applies only to awards entered by arbitrators and not to the trial court.

Defendant argues, nevertheless, that the limit applies to the trial court. He points to the following language of Illinois Supreme Court Rule 86 in support: "A civil action shall be subject to mandatory arbitration *if each claim therein is exclusively for money in an amount or of a value* not in excess of the monetary limit authorized by the Supreme Court for that circuit or county within that circuit, exclusive of interest and costs." (Emphasis added.) Ill. S. Ct. R. 86(b) (eff. Jan. 1, 1994). Defendant contends that the trial court's authority to enter an award is thus limited by the claim made. However, a "claim" is simply "[a] demand for money or property to which one asserts a

right." Black's Law Dictionary 240 (7th ed. 1999). An "award," on the other hand, is "[a] final judgment or decision, esp[ecially] one by an arbitrator or jury assessing damages." Black's Law Dictionary 132 (7th ed. 1999). The fact that $50,000 is claimed makes the case arbitration eligible under Illinois Supreme Court Rule 86. This does not limit the authority of the trial court to enter any award of damages. The limitation upon the arbitrator's ability to enter an award is found in Illinois Supreme Court Rule 92(b), and there is no similar limitation on the trial court's authority. This is consistent with section 2—604 of the Civil Practice Law, which states, "Except in case of default, the prayer for relief does not limit the relief obtainable ***." 735 ILCS 5/2—604 (West 2006). In other words, the amount of the claim does not limit the trial court's authority.

Accordingly, we conclude that the various rules pertaining to arbitration do not limit the trial court's ability to award damages. Before closing, we note that defendant also relies upon Illinois Supreme Court Rule 222 (eff. July 1, 2006) in arguing that the trial court properly reduced the damages awarded to plaintiff to $50,000. This rule provides, in pertinent part, as follows:

> "Any civil action seeking money damages shall have attached to the initial pleading the party's affidavit that the total of money damages sought does or does not exceed $50,000. If the damages sought do not exceed $50,000, this rule shall apply. Any judgment on such claim which exceeds $50,000 shall be reduced posttrial to an amount not in excess of $50,000. Any such affidavit may be amended or superseded prior to trial pursuant to leave of court for good cause shown, and only if it is clear that no party will suffer any prejudice as a result of such amendment." Ill. S. Ct. R. 222(b) (eff. July 1, 2006).

We decline to address the applicability of this rule here. Given our disposition of this appeal, this issue is not likely to recur on retrial. See *People v. Wilkerson*, 87 Ill. 2d 151, 160 (1981). Rule

222(b) permits affidavits regarding damages to be amended before trial, and plaintiff will have such an opportunity in the present case.

## VI. CONCLUSION

In light of the foregoing, the judgment of the circuit court of Du Page County is reversed. This cause is remanded for a new trial. We do not intend this opinion to limit the pretrial procedures the trial court may engage in on remand.

Reversed and remanded.