NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230790-U

NO. 4-23-0790

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 3, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| GEORGE ODARCZENKO, as Administrator of the Estate of Victoria Odarczenko, Deceased, Plaintiff-Appellant, v. POLARIS INDUSTRIES, INC. (The Delaware Corporation); POLARIS INDUSTRIES, INC. (The Minnesota Corporation); POLARIS SALES, INC.; RICHMOND MOTORSPORTS LLC; CUSTOM PRODUCTS OF LITCHFIELD, INC.; and NATHAN P. ZEIEN, Defendants (Richmond Motorsports LLC, Defendant-Appellee). | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Boone County No. 21L13 Honorable C. Robert Tobin III, Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Doherty and Grischow concurred in the judgment.

**ORDER**

¶ 1     *Held:* (1) Plaintiff failed to establish a *prima facie* case of personal jurisdiction over defendant, a Kentucky corporation, and therefore the circuit court did not err by granting defendant's motion for dismissal under section 2-301 of the Code of Civil Procedure (735 ILCS 5/2-301 (West 2022)).

(2) Because plaintiff failed to establish a *prima facie* case of personal jurisdiction over defendant, the circuit court did not abuse its discretion by issuing protective orders limiting and subsequently denying jurisdictional discovery.

¶ 2     Plaintiff, George Odarczenko, is the administrator of the estate of Victoria Odarczenko, who suffered fatal injuries in a rollover of a motorized utility task vehicle (UTV). In the Boone County circuit court, plaintiff brought a wrongful death action and a survival action against the driver, Nathan P. Zeien. The third amended complaint also included products liability

counts against the manufacturers of the vehicle and against defendant, Richmond Motorsports LLC, the Kentucky dealership that had sold the vehicle to Zeien. (Allegedly, the roll bar of the vehicle was defectively designed.)

¶ 3 Asserting a lack of personal jurisdiction (see 735 ILCS 5/2-301 (West 2022)), defendant moved for a dismissal of the claims in the third amended complaint that were directed against it. While contesting the section 2-301 motion on its merits, plaintiff filed motions for jurisdictional discovery. Defendant had refused plaintiff's discovery requests. In his motions for jurisdictional discovery, plaintiff sought to compel defendant's compliance. The circuit court ultimately denied plaintiff's motions for jurisdictional discovery and granted defendant's section 2-301 motion for dismissal. In so ruling, the court made a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Plaintiff appeals.

¶ 4 We agree with the circuit court that plaintiff failed to establish a *prima facie* case of personal jurisdiction over defendant. Because plaintiff failed to meet that threshold obligation, we find no abuse of discretion in the court's decisions to limit and ultimately deny jurisdictional discovery. Therefore, we affirm the court's judgment.

¶ 5 I. BACKGROUND

¶ 6 On November 22, 2021, defendant filed a second amended complaint, which included claims against defendant under theories of strict products liability and negligence.

¶ 7 On February 1, 2022, Judge Barch granted defendant's motion to dismiss counts XII through XV of the second amended complaint for failure to plead personal jurisdiction. See 735 ILCS 5/2-301 (West 2022). He made the dismissal without prejudice, however, and gave plaintiff permission to replead, without specifying a deadline for repleading.

¶ 8　　　　　　On March 1, 2022, plaintiff moved for reconsideration of the dismissal of counts XII through XV of the second amended complaint. He also moved for jurisdictional discovery. On March 3, 2022, in a hearing on these motions, Judge Barch explained:

> "I [dismissed the counts without prejudice,] anticipating that [plaintiff] would be re-pleading and they would need some discovery perhaps to get that done.
>
> 　　　　The rule provides that discovery can be conducted while the motion is pending \*\*\*. \*\*\* I would vacate my order and allow discovery but if—my intention was to allow [plaintiff] to do the discovery if as needed to explore whether there's a basis to confirm that [defendant] did anything here in the state of Illinois \*\*\*."

Accordingly, on April 19, 2022, Judge Barch granted plaintiff's motion for reconsideration, vacating the dismissal of the four counts, and "continued generally" defendant's motion for dismissal. The order scheduled a case management conference for April 29, 2022, when the circuit court was to "enter a schedule for completion of jurisdictional discovery." It does not appear that a case management conference took place on that date.

¶ 9　　　　　　Nevertheless, plaintiff served upon defendant jurisdictional discovery requests, which, on July 21, 2022, defendant refused. Consequently, on July 25, 2022, plaintiff moved to compel defendant's compliance with jurisdictional discovery. Plaintiff also moved for permission to file a third amended complaint.

¶ 10　　　　　　On August 12, 2022, a different judge, Judge Balogh, held a hearing on plaintiff's motions to compel jurisdictional discovery and to file the third amended complaint. He declined to order defendant to comply with plaintiff's requests for jurisdictional discovery. His stated reason for the denial was that "until *in personam* jurisdiction is established, I can't compel them to do anything." Having reviewed the proposed third amended complaint, Judge Balogh remarked,

"[T]here's not enough in there now to establish *in personam* jurisdiction." Plaintiff's counsel responded, "I don't think we're in a position right now to know whether that's enough." "But it's your burden to plead jurisdiction," Judge Balogh pointed out. "It's my burden to plead it once I get jurisdictional discovery," plaintiff's counsel answered, "and [Judge Barch] ruled that[,] based on the facts that were alleged[,] there was enough in his discretion to order jurisdictional discovery to go forward against [defendant]." Observing that he was "not bound by any of Judge Barch's rulings," Judge Balogh denied plaintiff's motion to compel jurisdictional discovery. Judge Balogh granted, however, plaintiff's motion to file, *instanter*, the third amended complaint. "[T]he issue of jurisdictional discovery will be addressed in [defendant's] response to the third amended complaint," Judge Balogh told plaintiff's counsel, "and *** you will then have an opportunity to once again convince the Court that you are entitled to jurisdictional discovery."

¶ 11        In the third amended complaint, plaintiff alleged essentially as follows. At his home in Belvidere, Illinois, Zeien googled " 'RZR turbo Polaris.' " This query yielded an Internet advertisement from defendant, "a Kentucky corporation located and doing business [in] Richmond, Kentucky." The advertisement was of a vehicle that Zeien thought he might want to buy. Zeien responded electronically to the advertisement, expressing an interest in the vehicle and providing his information. A salesperson responded to Zeien's Internet inquiry by telephoning Zeien. In their phone conversation, "they arranged for Zeien to go to Richmond, Kentucky[,] to view UTVs" that defendant had "for sale." Zeien and defendant also corresponded via e-mail. In April 2020, Zeien "purchased from [defendant]" a 2020 Polaris RZR XP 4 Turbo UTV with a 168-horsepower engine. On October 9, 2020, Zeien was driving the vehicle in the Nicolet National Forest in Wisconsin, and Victoria Odarczenko was in the back seat. When Zeien attempted to negotiate a curve in the road, the vehicle rolled over onto the driver's side, slid off the road, and

struck some trees. Victoria Odarczenko suffered fatal injuries in the accident. According to the third amended complaint, the vehicle had an "unreasonable [*sic*] dangerous roll cage design."

¶ 12        On August 23, 2022, pursuant to section 2-1001(a)(2) of the Code of Civil Procedure (735 ILCS 5/2-1001(a)(2) (West 2022)), plaintiff moved, as a matter of right, for the substitution of Judge Balogh. On September 16, 2022, Judge Tobin granted the motion by assigning the case to himself.

¶ 13        On October 3, 2022, plaintiff filed a motion for jurisdictional discovery. In his motion, he cited Illinois Supreme Court Rule 201(*l*) (eff. July 1, 2014). As in his prior motion for jurisdictional discovery (when the complaint was in its second amendment), he sought to compel defendant to answer interrogatories, produce documents, and undergo depositions.

¶ 14        On November 30, 2022, Judge Tobin concluded that "[b]ecause facts to support general personal jurisdiction were never pled in the Complaint, the request to conduct discovery to attempt to find evidence to support general personal jurisdiction is a prime example of a fishing expedition." Even so, Judge Tobin ordered defendant to answer a single interrogatory, interrogatory No. 1, which inquired what was "[t]he method of delivery that [defendant] used to make delivery to Nathan P. Zeien the vehicle referred to in paragraph 10 of the Second [*sic*] Amended Complaint."

¶ 15        Defendant declined to answer interrogatory No. 1. Consequently, the circuit court held that defendant was in noncontumacious contempt. On January 10, 2023, defendant appealed the contempt order (case No. 4-23-0040). Plaintiff filed a cross-appeal, in which he challenged Judge Tobin's denial of all his jurisdictional discovery requests other than interrogatory No. 1.

¶ 16        On January 23, 2023, while defendant's contempt appeal was pending, plaintiff filed, in the circuit court, a motion for sanctions against Zeien, claiming that some of Zeien's

answers to the third amended complaint were in bad faith. In support of his motion for sanctions, plaintiff presented excerpts from a discovery deposition that Zeien gave on June 7, 2022, in a coverage action by Zeien's insurer, *Progressive Universal Insurance Co. v. Zeien*, Boone County case No. 21-MR-109. (Because defendant was not a party to the coverage action, defendant's attorney did not attend Zeien's deposition.) On February 1, 2023, in the present case, Zeien filed a response to plaintiff's motion for sanctions and attached to his response a complete transcript of his deposition.

¶ 17    In its brief in this appeal, defendant gleans the following information from Zeien's deposition:

"[(1)] Zeien purchased the Polaris UTV at [defendant's] dealership in Kentucky, and paid Kentucky sales tax. [Citations.]

[(2)] Zeien originally talked to someone at [defendant's dealership] about a used machine. However, when he went to Kentucky, he 'decided to purchase a brand new machine.' [Citations.]

[(3)] Zeien went to [defendant's] dealership in Kentucky on one occasion. He took two friends with him. After he decided to purchase a new UTV, [defendant] took the UTV 'out of the crate and built it' for Zeien while he waited. [Citations.]

[(4)] Zeien signed all of the paperwork for the Polaris UTV in Kentucky, and [defendant] further 'made' Zeien put insurance on it before he 'left the parking lot.' [Citation.]

[(5)] Zeien had no further communication with [defendant] after he bought the Polaris UTV. [Citation.]"

¶ 18          In addition to obtaining Zeien's discovery deposition, plaintiff obtained, by subpoena, Zeien's phone records from Verizon. These Verizon records revealed that from March 30 to April 2, 2020, Zeien had 12 telephonic interactions with Kentucky area codes. Three of these telephone calls were to or from defendant's telephone number in Kentucky.

¶ 19          On March 8, 2023, defendant filed with the appellate court a motion to dismiss the contempt appeal. The motion explained, "Newly discovered evidence in the [circuit] court below has raised the possibility that the issue giving rise to this appeal could potentially be resolved short of a determination by this Court." Defendant "inten[ded] to seek a reconsideration of the [circuit] court's prior ruling based on this evidence." The motion added, "While there is a notice of cross-appeal pending, it was filed ancillary to the original appeal, and there is no independent jurisdictional basis for the cross-appeal to proceed absent [defendant's] notice of appeal." On March 16, 2023, the appellate court dismissed defendant's appeal and plaintiff's cross-appeal in case No. 4-23-0040. The mandate was issued on April 21, 2023.

¶ 20          On April 24, 2023, in the circuit court, defendant filed a motion to vacate the contempt order and to reconsider the order of November 30, 2022, in which Judge Tobin had ordered defendant to answer interrogatory No. 1.

¶ 21          On June 2, 2023, Judge Tobin granted defendant's motion for reconsideration, vacated the friendly contempt order, and now denied, *in toto*, plaintiff's motions to compel jurisdictional discovery, excusing defendant from having to answer interrogatory No. 1. Judge Tobin made this ruling in reliance on newly discovered evidence, namely, Zeien's deposition in the coverage case.

¶ 22     On June 16, 2023, plaintiff filed another motion for jurisdictional discovery, citing the telephone records. On June 22, 2023, Judge Tobin denied the motion and gave plaintiff 21 days to respond to defendant's section 2-301 motion for dismissal.

¶ 23     Plaintiff insisted that dismissing the counts against defendant would be premature because, under Rule 201(*l*), he was entitled to jurisdictional discovery. He pointed out that when his previous motion for jurisdictional discovery was denied, he lacked the evidence of Zeien's telephone interactions with Kentucky. He argued he needed jurisdictional discovery to find out the identities of some of the telephone interlocutors and to learn if one of the entities that had taken Zeien's calls, VIPDeskConnect, Inc., had any relationship with defendant.

¶ 24     On August 15, 2023, Judge Tobin granted defendant's section 2-301 motion to dismiss, with prejudice, the claims against it in the third amended complaint. The circuit court found "that this is a final and appealable order under Supreme Court Rule 304(a) in that there is no just reason for delaying an appeal."

¶ 25                              II. ANALYSIS

¶ 26           A. The Appealability of the Interlocutory Order of Dismissal

¶ 27     Rule 304(a) provides:

"If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

There are multiple defendants in this case. By granting a section 2-301 motion for dismissal, with prejudice, by one of these defendants, the circuit court entered "a final judgment as to one *** but

fewer than all of the parties." *Id.* In its dismissal order, the court made "an express written finding that there is no just reason for delaying *** appeal." *Id.* The court entered the dismissal order on August 15, 2023, and plaintiff filed his notice of appeal within the ensuing 30-day period, on September 11, 2023. See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017) ("The notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from ***."); Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016) ("The time for filing a notice of appeal shall be as provided in Rule 303."). We conclude, therefore, that we have jurisdiction over this interlocutory appeal.

¶ 28                                  B. Scope of This Appeal

¶ 29            In his notice of appeal, plaintiff seeks a reversal of three orders: (1) the order of November 30, 2022, in which the circuit court limited jurisdictional discovery to interrogatory No. 1; (2) the order of June 22, 2023, in which the court completely denied jurisdictional discovery (having previously, on June 2, 2023, struck the requirement that defendant answer interrogatory No. 1); and (3) the order of August 15, 2023, in which the court granted defendant's section 2-301 motion for a dismissal, with prejudice, of the claims in the third amended complaint that were directed against defendant.

¶ 30                      C. No Need to Parse the Long-Arm Statute

¶ 31            In Illinois, the long-arm statute, section 2-209 of the Code of Civil Procedure (735 ILCS 5/2-209 (West 2022)), addresses the exercise of personal jurisdiction over nonresident defendants. Under section 2-209(c), a court may exercise jurisdiction on any "basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." *Id.* § 2-209(c). "Thus, to determine whether jurisdiction is appropriate under subsection (c), we must consider the constitutional limits placed on a state's authority to exercise jurisdiction over a

nonresident defendant." *Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 13. "Because defendant in this case does not argue that the Illinois Constitution imposes any greater restraints on the exercise of jurisdiction than the federal constitution, we consider only federal constitutional principles." *Id.* Analysis under the Illinois long-arm statute is unnecessary.

¶ 32                    D. Failure to Establish a *Prima Facie* Case of

Personal Jurisdiction, General or Specific

¶ 33        On appeal, plaintiff contends that the circuit court erred not only by denying his motions for jurisdictional discovery but also by finding a lack of personal jurisdiction over defendant. Plaintiff maintains that the court had both kinds of personal jurisdiction over defendant: general jurisdiction and specific jurisdiction.

¶ 34        If it were already apparent, from the record, that the circuit court had personal jurisdiction over defendant, jurisdictional discovery would be superfluous. Therefore, before reviewing the rulings on plaintiff's motions for jurisdictional discovery, we will evaluate plaintiff's argument that the court had personal jurisdiction over defendant.

¶ 35                                1. *Procedure*

¶ 36        We begin by describing the procedure by which a circuit court should determine the existence or nonexistence of personal jurisdiction. The plaintiff has the initial burden of establishing a *prima facie* case of personal jurisdiction. *Russell v. SNFA*, 2013 IL 113909, ¶ 28. "Where a plaintiff seeks to hold a non-resident defendant liable, the complaint must allege facts upon which jurisdiction *** is based." *Bobka v. Cook County Hospital*, 117 Ill. App. 3d 359, 360 (1983). Thus, "we first consider whether [the] plaintiff has set forth a *prima facie* case for personal jurisdiction in [the] complaint." *Wood v. Samsung SDI Co., Ltd.*, 2024 IL App (4th) 230994, ¶ 14; see also *Bobka*, 117 Ill. App. 3d at 361 ("Thus, we must first examine plaintiff's complaint and

- 10 -

determine whether a *prima facie* showing of jurisdiction appears therein.") "The factual basis for assertion and existence of jurisdiction over the person of a nonresident defendant depends upon the allegations of facts in the complaint before the court." *First National Bank of Chicago v. Screen Gems, Inc.*, 40 Ill. App. 3d 427, 433 (1976) (citing *Nelson v. Miller*, 11 Ill. 2d 378 (1957)). See also *Heller Financial, Inc. v. Conagra, Inc.*, 166 Ill. App. 3d 1, 4 (1988) ("[A] plaintiff must allege facts in the complaint upon which to base jurisdiction over a nonresident defendant ***."); *People v. Parsons Co.*, 122 Ill. App. 3d 590, 596 (1984) ("[A] plaintiff who seeks to hold a nonresident liable must allege facts in the complaint upon which jurisdiction may be based.").

¶ 37        If, by the factual allegations in the complaint, the plaintiff provides a basis for the exercise of personal jurisdiction over the nonresident defendant, "the burden then shifts to the defendant to demonstrate why the assertion of jurisdiction would be unreasonable." *Bell v. Don Prudhomme Racing, Inc.*, 405 Ill. App. 3d 223, 228 (2010). Unless the record already affords the means of making this demonstration of unreasonableness, the defendant must do so by affidavit. See 735 ILCS 5/2-301(a) (West 2022); see also *Wood*, 2024 IL App (4th) 230994, ¶ 14. As section 2-301(a) puts it, "[u]nless the facts that constitute the basis for the objection [to personal jurisdiction] are apparent from papers already on file in the case, the motion [for dismissal] must be supported by an affidavit setting forth those facts." 735 ILCS 5/2-301(a) (West 2022). The allegations in the complaint are taken as true as long as the defendant does not contradict them by an affidavit. See *In re Marriage of DiFiglio*, 2016 IL App (3d) 160037, ¶ 14. If the defendant files an affidavit, the complaint is no longer taken as true to the extent that the defendant's affidavit contradicts the complaint. See *Wood*, 2024 IL App (4th) 230994, ¶ 14; *Professional Group Travel, Ltd. v. Professional Seminar Consultants, Inc.*, 136 Ill. App. 3d 1084, 1089 (1985).

¶ 38 Only a counter affidavit can meet the defendant's affidavit; contrary allegations in the complaint cannot do so. See *Professional Group*, 136 Ill. App. 3d at 1089; *Doolin v. K-S Telegage Co.*, 75 Ill. App. 3d 25, 29 (1979). "The trial court will accept as true any facts in the defendant's affidavit that the plaintiff does not contradict by counteraffidavit ***." *Khan v. Gramercy Advisors, LLC*, 2016 IL App (4th) 150435, ¶ 88. If the defendant's affidavit and the plaintiff's counteraffidavit "clash on a material issue of fact," the conflict " 'must be resolved in the plaintiff's favor.' " *Id.* ¶ 89 (quoting *Russell*, 2013 IL 113909, ¶ 28).

¶ 39 In accordance with that procedure, we take up the question of whether plaintiff established a *prima facie* case of personal jurisdiction over defendant. Plaintiff maintains he did so. Defendant disagrees, urging us to consider not only the third amended complaint but also Zeien's deposition.

¶ 40 In ruling upon a section 2-301 motion for dismissal, "the court shall consider all matters apparent from the papers on file in the case, affidavits submitted by any party, and any evidence adduced upon contested issues of fact." 735 ILCS 5/2-301(b) (West 2022). Therefore, under section 2-301(b), even if the plaintiff fails to plead, in the complaint, a factual basis for the exercise of personal jurisdiction over the nonresident defendant (although the plaintiff should do so), dismissal is unwarranted if an affidavit or other evidence cures the deficiency. See *id.* If the "papers on file" show that the circuit court has personal jurisdiction, the court should exercise it. *Id.*

¶ 41 Because the circuit court decided the question of personal jurisdiction solely in reliance on documentation, without an evidentiary hearing, our standard of review on this question is *de novo*. See *Russell*, 2013 IL 113909, ¶ 28; *Midwest Mailing & Shipping Systems, Inc. v. Schoenberg, Finkel, Newman & Rosenberg, LLC*, 2021 IL App (1st) 200669, ¶ 46.

¶ 42                                    2. *General Jurisdiction*

¶ 43          There are two kinds of personal jurisdiction: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 358 (2021).

¶ 44          An individual is subject to general jurisdiction in the place of his or her domicile. *Id.* at 358-59. The "domiciles" of a corporation, such as defendant, are its "place of incorporation and principal place of business." *Id.* at 359. The third amended complaint does not allege that defendant is incorporated in Illinois or that Illinois is defendant's principal place of business.

¶ 45          But there is another way of showing general jurisdiction—a more difficult way. "[I]n an 'exceptional case,' a corporate defendant's activities in a forum outside its place of incorporation or principal place of business 'may be so substantial and of such a nature as to render the corporation at home in that State.' " *Aspen*, 2017 IL 121281, ¶ 17 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014)). The third amended complaint does not describe continuous and systematic contacts of defendant with Illinois such that Illinois could be reasonably characterized as one of defendant's "homes."

¶ 46          It is true that defendant advertised on the Internet and that the Internet is in continuous contact with Illinois. The Internet is here constantly, omnipresent, merely keystrokes or a voice command away. But an analogous observation could be made about a hard-print flier. Granted, this hypothetical flier is not as readily accessible to all Illinois residents as is the Internet. Even so, the flier (let us say) is routinely circulated in Illinois, and to any Illinois resident who comes across the flier, its advertisements are within easy reach. Just as the user of an interactive website can key in some identifying information and get a reply, so can anyone get a reply by tearing out the perforated card in the flier, filling out the card, and mailing it in. The differences in

technology seem unimportant. See *Howard v. Missouri Bone & Joint Center, Inc.*, 373 Ill. App. 3d 738, 743 (2007). They are merely different means of accomplishing advertisement and solicitation. Therefore, "[g]enerally, the mere maintenance of an interactive website is not enough" to confer personal jurisdiction. *Innovative Garage Door Co. v. High Ranking Domains, LLC*, 2012 IL App (2d) 120117, ¶ 21.

¶ 47        According to the third amended complaint, all that defendant did in Illinois was advertise its vehicles on the Internet and solicit Zeien by e-mail and telephone. We see no evidence or allegation that defendant ever sold a single vehicle in Illinois. Advertisement and solicitation in Illinois by printed matter and phone calls hardly would make Illinois the nonresident corporation's "surrogate for the place of incorporation or head office." (Internal quotation marks omitted.) *Aspen*, 2017 IL 121281, ¶ 17. Those activities would not confer general jurisdiction. See *Radosta v. Devil's Head Ski Lodge*, 172 Ill. App. 3d 289, 295 (1988). The same observation applies to a website. Whether the gratuitously distributed print is digital instead of paper and ink is logically irrelevant. See *Illinois v. Hemi Group LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (noting the Seventh Circuit's "hesita[tion] to fashion a special jurisdictional test for Internet-based cases" (internal quotation marks omitted)). Therefore, the third amended complaint and Zeien's deposition, with their accounts of advertisement and solicitation in Illinois, fail to show the existence of general jurisdiction over defendant. The ubiquity of the Internet is an insufficient contact. See *Innovative Garage*, 2012 IL App (2d) 120117, ¶ 21.

¶ 48                          3. *Specific Jurisdiction*

¶ 49        Even though, judging by the third amended complaint and the documentary evidence, defendant is not so "intimately connected with" Illinois that Illinois courts have general jurisdiction over defendant, there is, as we have mentioned, another kind of personal jurisdiction:

specific jurisdiction. See *Ford Motor Co.*, 592 U.S. at 352. "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.' " *Id.* at 359 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1995)). The concept of purposeful availment appears to come ultimately from *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), in which the United States Supreme Court held that, for a state court to have personal jurisdiction over a nonresident defendant, there had to be "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Purposeful availment is indispensable to specific jurisdiction. "[I]n *all* cases of specific personal jurisdiction, ' "it is essential in *each* case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." ' " (Emphases added.) *Russell*, 2013 IL 113909, ¶ 81 (quoting *Burger King*, 471 U.S. at 475, quoting *Hanson*, 357 U.S. at 253).

¶ 50　　　　　As the Supreme Court explained in *Ford Motor Co.*, this concept of "purposeful availment" embodies two values: (1) "treating defendants fairly" and (2) "protecting interstate federalism." (Internal quotation marks omitted.) *Ford Motor Co.*, 592 U.S. at 360. Starting with the first value, it is only fair to expect reciprocity between the defendant and the forum state. See *id.* "When (but only when) a company exercises the privilege of conducting activities within a state—thus enjoy[ing] the benefits and protections of [its] laws—the State may hold the company to account for related misconduct." (Internal quotation marks omitted.) *Id.* Implicit in reciprocity is a "fair warning" that participating in a state's legal-economic system means accepting the participation of others, even against oneself. (Internal quotation marks omitted.) *Id.* If, in doing business in the forum state, the nonresident corporation takes advantage of legal rights and protections afforded by the state's courts, the corporation should expect that the road will run both

ways: state law may be invoked, in the state's courts, against the corporation, too. When entering into a contractual agreement in the state, for example, the corporation counts on the availability of enforcement in the state's courts, pursuant to the state's contract laws, if the other party breaches the agreement. All contracts, by definition, are undergirded by the option of judicial enforcement if a party to the contract fails to keep the promises it made therein. See Restatement (Second) of Contracts § 1 (1981) ("A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty."). It should come as no surprise to the corporation that, correspondingly, plaintiffs in the state may count on the state's courts for legal remedies against the corporation—for breach of contract or any other legal wrong.

¶ 51        Understanding and expecting this principle of reciprocity, the nonresident corporation will have a fair opportunity to "structure [its] primary conduct to lessen or avoid exposure to a given State's courts." (Internal quotation marks omitted.) *Ford Motor Co.*, 592 U.S. at 360. This structuring could take the form of refraining from doing business in such a way as to "invok[e] the benefits and protections" of the forum state's laws (see *Hanson*, 357 U.S. at 253)— unless the nonresident corporation does not mind if those benefits and protections are invoked against it, too, in the forum state's courts.

¶ 52        In addition to a defendant's due process interest in not being haled into the court of a state with which the defendant lacks "meaningful contacts, ties, or relations" (internal quotation marks omitted) (*Burger King*, 471 U.S. at 471-72), the Supreme Court "has considered" the interests "of the States in relation to each other" (*Ford Motor Co.*, 592 U.S. at 360). By trying a case, one state might effectively prevent another state from doing so, even though the other state might have a greater interest in the matter. *Id.* Illinois should not unfairly elbow aside Kentucky

and Wisconsin. Apart from the fortuitous circumstance that the allegedly neglectful driver, Zeien, resides in Illinois, this state appears to have little interest in plaintiff's claim against defendant. After all, the distributor of the allegedly dangerous vehicle (namely, defendant) is in Kentucky. The sale was made, and the vehicle was delivered, in Kentucky. The accident happened in Wisconsin. In these circumstances, it is difficult to imagine a principled rationale for choosing Illinois as a forum for this claim against defendant. Surely, Kentucky and Wisconsin have a greater interest in this matter than Illinois.

¶ 53    Like the relative interest question, the due process question is not even close. According to the third amended complaint, all defendant did was advertise the vehicles on the Internet, telephonically follow up on Zeien's Internet inquiry, and correspond with Zeien by e-mail. Plaintiff does not explain how, by engaging in those activities, defendant invoked the benefits and protections of Illinois law—an essential precondition to the exercise of specific jurisdiction over defendant. See *id.*; *Burger King*, 471 U.S. at 475. (We do not mean to foreclose the possibility that if a nonresident uses the telephone or Internet to *defraud* someone in Illinois, this state will have specific jurisdiction over the nonresident. See *Khan*, 2016 IL App (4th) 150435, ¶ 197.)

¶ 54    In cases cited by plaintiff, nonresident corporations invoked the benefits and protections of the forum state's laws. In *Ford Motor Co.*, for example, Ford had, as the Supreme Court put it, a "government-protected in-state business" in Minnesota and Montana. *Ford Motor Co.*, 592 U.S. at 368. Property law in those states protected the numerous Ford dealerships. See *id.* at 365. The physical facilities of the dealerships could not have existed without leases or deeds enforceable in the state courts. A dealership could not have owned vehicles without state laws defining chattel ownership and bestowing upon the dealership the capacity to own property. Purchase agreements, franchise agreements, and agreements to provide advertising services were

contracts only because state courts were prepared to enforce such agreements in accordance with state law. See *id.* at 355 ("To enhance its brand and increase its sales, Ford engage[d] in wide-ranging promotional activities, including television, print, online, and direct-mail advertisements."). A state's laws of property and contract are an all-encompassing medium into which a business entity unavoidably plunges when "systematically serv[ing] a market" in the state. *Id.* at 365.

¶ 55       The third amended complaint, Zeien's deposition, and the Verizon records give us no reason to think that defendant has taken the plunge in Illinois. For all that appears in those materials, defendant made a single sale—not in Illinois but in Kentucky. Contrary to plaintiff's suggestion, then, defendant is not comparable to Ford in *Ford Motor Co.*

¶ 56       Nor is defendant comparable to the defendant in *Kothawala v. Whole Leaf, LLC*, 2023 IL App (1st) 210972, ¶ 2, a company that "had sold nearly 2 million [batteries] *within Illinois* during the relevant period," thereby invoking, with each sale, the statutes and common law of Illinois governing the sales of goods. (Emphasis added.) By contrast, when defendant makes a sale, it evidently does so at its dealership in Richmond, Kentucky, not in Illinois.

¶ 57       Nor is defendant comparable to the defendant in *Russell*, a French company that "had a business relationship with a branch or division of Hamilton Sundstrand in Rockford, Illinois." *Russell*, 2013 IL 113909, ¶ 79. Through Hamilton Sundstrand, the defendant in *Russell* had sold "approximately $1 million" of its products in Rockford. *Id.* The supreme court remarked, "By engaging a business entity located in Illinois, [the] defendant undoubtedly benefitted from Illinois' system of laws, infrastructure, and business climate." *Id.* ¶ 81. The defendant in *Russell* even had an agreement with Hamilton Sundstrand whereby "any disagreements arising from [their agreement] would be 'subject to Illinois law.' " *Id.* In the present case, plaintiff does not allege

that defendant engaged any Illinois company to sell its vehicles or that defendant ever agreed to be subject to Illinois law.

¶ 58 Nor is defendant comparable to the defendant in *Innovative Garage*. Plaintiff does not allege that defendant "entered into a contract that established a long-term [and] open-ended relationship with an Illinois business." *Innovative Garage*, 2012 IL App (2d) 120117, ¶ 25.

¶ 59 Therefore, we conclude that plaintiff failed to establish the existence of specific jurisdiction over defendant, just as he failed to establish the existence of general jurisdiction. See *Aspen*, 2017 IL 121281, ¶ 12. Zeien's deposition and telephone records do not alter our conclusion. All these materials do is confirm plaintiff's allegations that Zeien found defendant's advertisement on the Internet and reached out to defendant. Defendant replied to Zeien's inquiry and encouraged him to come to Kentucky and see what defendant had on offer. After Zeien went to Kentucky—where he bought the vehicle and where it was delivered to him—he had no further contact with defendant.

¶ 60 In short, the Illinois contacts are nothing more than an Internet advertisement and solicitations by defendant. "Illinois courts have long held that a mere advertisement or solicitation is not enough to sustain personal jurisdiction in Illinois." *Howard*, 373 Ill. App. 3d at 743.

¶ 61 E. Jurisdictional Discovery

¶ 62 1. *Defendant's Limited Submission to the*

*Jurisdiction of the Boone County Circuit Court*

*(Only to Resolve the Issue of Personal Jurisdiction)*

¶ 63 Upon receiving the complaint and a summons from the circuit court of Boone County, defendant—a Kentucky corporation with its principal place of business in Richmond, Kentucky—had three options. The first option was to ignore the complaint and summons and then,

if a default judgment were issued against defendant, "challenge the issuing court's jurisdiction in a collateral proceeding (presumably closer to home or other assets) when the plaintiff [sought] to enforce the judgment." *Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 311 (S.D. Ind. 1997). The second option was to voluntarily waive any objection to personal jurisdiction and submit to the jurisdiction of the Boone County circuit court. See *id.* The third option, which defendant took, was to appear in the Boone County circuit court for the limited purpose of challenging personal jurisdiction. See *id.* By choosing the third option, defendant "submit[ted] [itself] to the jurisdiction and power of" the Boone County circuit court "for the limited purpose of deciding the jurisdictional issue." *Id.*

¶ 64       This concept of limited submission to personal jurisdiction comes from *Insurance Group of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982). In *Insurance Group*, a mining company bought business interruption insurance from a primary insurer and from excess insurers. *Id.* at 696. Afterward, when the mining company suffered a business interruption loss that exceeded the primary coverage, most of the excess insurers refused to pay. *Id.* at 697. Consequently, the mining company sued these excess insurers in the federal district court for the Western District of Pennsylvania. *Id.* at 698. The excess insurers, which were incorporated in foreign countries (*id.* at 698 n.2), appeared in the district court, challenged personal jurisdiction, and refused to comply with discovery requests by the mining company (*id.* at 698). The district court warned the excess insurers that their continued noncompliance with discovery would result in a sanction, namely, a ruling that the court had personal jurisdiction over them. *Id.* at 699. The court-imposed deadline for compliance went by, and still the excess insurers failed to turn over the requested documents. *Id.* Consequently, pursuant to procedural rules setting forth the penalties for recalcitrance in discovery, the court ruled that it had personal jurisdiction over the excess insurers.

*Id.* In other words, the question to which the (unanswered) discovery requests related was punitively resolved against the excess insurers. *Id.*

¶ 65        The excess insurers in *Insurance Group* appealed, arguing to the Supreme Court that "until a court ha[d] jurisdiction over a party, that party [did not have to] comply with orders of the court" and that "failure to comply, therefore, [could not] provide the ground for a sanction." *Id.* at 696. That argument was misguided, the Supreme Court explained, because personal jurisdiction, unlike subject matter jurisdiction, could be waived. *Id.* at 706. The logic of the waiver in *Insurance Group* was this. Instead of risking a default judgment and challenging the default judgment on jurisdictional grounds in a collateral proceeding, the excess insurers had chosen to bring their jurisdictional challenge right away, in the district court. See *id.* Having so chosen, the excess insurers had impliedly "agree[d] to abide by that court's determination on the issue of jurisdiction," a determination that would be "*res judicata* on that issue in any further proceedings." *Id.* By corollary, the excess insurers had impliedly agreed to abide by the court's procedural rules governing the determination of personal jurisdiction, including discovery rules. See *id.* Thus, *in the determination of the jurisdictional issue*—a determination governed by federal rules of civil procedure, including discovery rules—the excess insurers had waived the asserted lack of personal jurisdiction. See *id.* It was a limited waiver, but a waiver, nevertheless. Consequently, contrary to their contention on appeal, the excess insurers could indeed put themselves in the position of being sanctioned into a finding of personal jurisdiction, and the sanction would not violate due process. See *id.* at 709.

¶ 66        Accordingly, in the present case, there was no due process impediment to subjecting defendant to jurisdictional discovery. Having taken the "third route," defendant had

"submit[ted] to the procedures of the distant court, including discovery, for orderly resolution of the jurisdictional issue." *Ellis*, 175 F.R.D. at 311.

¶ 67 The germane question is whether the circuit court abused its discretion by limiting and afterward denying jurisdictional discovery. Defendant had taken the position that it did not have to submit to discovery, not even to discovery relevant to the issue of personal jurisdiction. Under *Insurance Group*, there was no *constitutional* justification for that position. Was there a justification, however, under the Illinois Supreme Court rules? Plaintiff's motions were essentially motions under Illinois Supreme Court Rule 219(a) (eff. July 1, 2002) to compel jurisdictional discovery. In its orders of November 30, 2022, and June 22, 2023, the court "limit[ed]" or "den[ied] *** discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." See Ill. S. Ct. R. 201(c)(1) (eff. July 1, 2014); Ill. S. Ct. R. 201(c)(1) (eff. Mar. 17, 2023). Functionally, then, these orders were protective orders under Rule 201(c)(1).

¶ 68 We review discovery orders for an abuse of discretion. *Eckerty v. Eastern Illinois Foodbank*, 2022 IL App (4th) 210537, ¶ 32. To conclude that the orders of November 30, 2022, and June 22, 2023, were abuses of discretion, we would have to characterize them as "unreasonable and arbitrary," or we would have to say that "no reasonable person would take the view adopted by the [circuit] court." (Internal quotation marks omitted.) *Id.* To meet that description, an order would have to be rather egregious. "Absent an abuse of discretion affirmatively and clearly shown by appellant, the trial court's order concerning discovery should not be disturbed on appeal." (Internal quotation marks omitted.) *Country Mutual Insurance Co. v. Olsak*, 391 Ill. App. 3d 295, 307 (2009). To be true to that language in *Olsak*, we must allow ample room for a reasonable difference of opinion. Abuse of discretion is "the most deferential standard of review—next to no review at all." *In re D.T.*, 212 Ill. 2d 347, 356 (2004).

¶ 69                            2. *The Defensibility of the Protective Orders*

¶ 70          In his motions for jurisdictional discovery, plaintiff invoked Rule 201(*l*). That rule reads as follows:

> "(*l*) Discovery Pursuant to Personal Jurisdiction Motion.
>
> (1) While a motion filed under section 2-301 of the Code of Civil Procedure [(735 ILCS 5/2-301 (West 2022))] is pending, a party may obtain discovery only on the issue of the court's jurisdiction over the person of the defendant unless: (a) otherwise agreed by the parties; or (b) ordered by the court upon a showing of good cause by the party seeking the discovery that specific discovery is required on other issues." Ill. S. Ct. R. 201(*l*)(1) (eff. Mar. 17, 2023).

¶ 71          We interpret a supreme court rule the same way we interpret a statute, *de novo*, giving the language of the rule its plain and ordinary meaning without inserting our own provisions into the text. *City of Aurora v. Greenwood*, 2022 IL App (2d) 210341, ¶ 43. "Where the language of the rule is clear as written, it must be applied without reading into it any conditions, exceptions, or limitations not expressed by the drafter." *Timothy Whelan Law Associates, Ltd. v. Kruppe*, 409 Ill. App. 3d 359, 375 (2011). Rule 201(*l*)(1) provides, without qualification, that while a motion for dismissal under section 2-301 is pending, the parties have the right to jurisdictional discovery. See Ill. S. Ct. R. 201(*l*)(1) (eff. Mar. 17, 2023). So, regardless of the reason why the section 2-301 motion is pending—whether because the circuit court has granted a continuance, needs time to draft a ruling, or is preoccupied with other matters—the parties have the right to jurisdictional discovery until the court rules on the motion or the movant withdraws the motion. Having the right "only" to jurisdictional discovery during the pendency of a section 2-301 motion means having

the right to jurisdictional discovery during the pendency of the motion. *Id.* Under Rule 201(*l*)(1), then, plaintiff had the right to jurisdictional discovery from defendant—without seeking permission from the circuit court—until the court granted defendant's section 2-301 motion for dismissal.

¶ 72    We say "under Rule 201(*l*)(1)" because paragraph (c)(1) of Rule 201 contains a potentially relevant qualification. That paragraph provides as follows: "The court may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." Ill. S. Ct. R. 201(c)(1) (eff. Mar. 17, 2023). The relevance of a discovery request would not necessarily prevent it from having the ill effects listed in Rule 201(c)(1). Just because a matter would be otherwise discoverable under the supreme court rules, the matter is not, *ipso facto*, insulated from a protective order. If the circuit court enters a protective order denying jurisdictional discovery, it will not be a sufficient objection that paragraphs (b)(1) and (*l*)(1) of Rule 201 (Ill. S. Ct. R. 201(b)(1), (*l*)(1) (eff. Mar. 17, 2023)), regarded in themselves, allow jurisdictional discovery. Paragraph (b)(1) reads, "*Except as provided in these rules*, a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action"—and Rule 201(c)(1) falls within the except-as-provided clause. (Emphasis added.) Ill. S. Ct. R. 201(b)(1) (eff. Mar. 17, 2023).

¶ 73    What we need to decide, then, is this: Did the circuit court abuse its discretion on November 30, 2022, and June 22, 2023, by entering protective orders "limit[ing]" and "denying *** discovery" (Ill S. Ct. R. 201 (c)(1) (eff. July 1, 2014); Ill. S. Ct. R. 201(c)(1) (eff. Mar. 17, 2023)), specifically, jurisdictional discovery? Again, our duty is to defer to the protective orders unless we find that by entering the orders, the court abused its discretion. See *Payne v. Hall*, 2013

IL App (1st) 113519, ¶ 12. "A court abuses its discretion only if it acts arbitrarily, without the employment of conscientious judgment, exceeds the bounds of reason and ignores recognized principles of law; or if no reasonable person would take the position adopted by the court." *Id.*

¶ 74 It seems to us that a reasonable and conscientious reader could interpret the appellate court's decision in *Screen Gems, Inc.*, as justifying the protective orders. In that case, Irna Phillips brought an action in Illinois against Screen Gems, Inc. (Screen Gems), for breach of contract. *Screen Gems*, 40 Ill. App. 3d at 428. Phillips died and was substituted by the executor of her estate, a bank—so, the bank was now the plaintiff. *Id.* Because Theodore Corday and Allan Chase also were parties to the contract, the bank filed an amended complaint naming them as additional parties. *Id.* Theodore Corday died and was substituted by the administrator of his estate, Elizabeth S. Corday. *Id.* A summons was served upon her in Hollywood, California, and upon Chase in San Mateo County, California. *Id.* Chase never appeared. *Id.* Elizabeth S. Corday filed a special appearance. *Id.* She moved to quash the summons, and Screen Gems moved to dismiss the amended complaint, because (1) Theodore Corday was a necessary party and (2) the circuit court never obtained personal jurisdiction over him. *Id.* The court granted these motions, and the bank appealed. *Id.*

¶ 75 Three of the contentions the bank made on appeal were that (1) Theodore Corday was not a necessary and indispensable party, (2) he had subjected himself to the personal jurisdiction of the circuit court, and (3) the circuit court had erred by "denying [the bank] the right to obtain information by discovery." *Id.* at 429. Taking those contentions in order, the appellate court agreed with the circuit court that "Theodore Corday and Allan Chase, or their personal representatives, [were] necessary parties and that the cause should not proceed until they [were] properly brought before the court." *Id.* at 432. The next question was whether these nonresident

defendants had "submitted [themselves] to the jurisdiction of the courts of Illinois by transacting business within Illinois." (Internal quotation marks omitted.) *Id.* at 433. The answer to that question "depend[ed] upon the allegations of facts in the complaint before the court." *Id.* "Examining the amended and proposed amended complaints," the appellate court "[found] no allegations which ha[d] any bearing upon jurisdiction of the court over the person of Allan Chase." *Id.* The appellate court concluded, therefore, that the circuit court never obtained personal jurisdiction over Allan Chase. *Id.* Likewise, in the appellate court's opinion, the "sketchy allegations" in the amended complaint "[fell] far short of demonstrating that [Theodore] Corday, during his lifetime, transacted business within Illinois so as to submit himself to the jurisdiction of Illinois in a cause of action 'arising from' the doing of such acts," to quote the Illinois long-arm statute (Ill. Rev. Stat. 1975, ch. 110, ¶ 17(1)(a)). *Screen Gems*, 40 Ill. App. 3d at 433. Under federal due process principles, the appellate court added,

> "the extremely minimal contacts and activities of [Theodore] Corday in Illinois during his lifetime were not sufficiently related to the subject matter of the cause of action here sought to be asserted so that it would be fair or reasonable to compel his administrator to join in this action and to defend in Illinois." *Id.* at 435.

Consequently, the appellate court "conclude[d] that the order appealed from quashing service of process upon Elizabeth S. Corday as administrator was properly entered." *Id.* at 434.

¶ 76 Finally—of particular significance to the present case—the appellate court wrote in the concluding paragraph of *Screen Gems*, "As above indicated, there are other contentions raised by the parties, none of which require consideration in view of the result above reached." *Id.* at 435. One of those "other contentions" was that the circuit court had "erred *** in denying [the] plaintiff the right to obtain information by discovery." *Id.* at 429. The import of the concluding

paragraph of *Screen Gems* is that it is unnecessary to allow jurisdictional discovery if the plaintiff fails to fulfill its threshold obligation of pleading, in the complaint, "[t]he factual basis for assertion and existence of jurisdiction over *** a nonresident defendant." *Id.* at 433.

¶ 77          "That cannot be right," someone might object. "If the plaintiff was expected to already know, from the start, the factual basis for personal jurisdiction and had to set forth that factual basis in the complaint, what would be the point of jurisdictional discovery? Clearly, Rule 201(*l*)(1) confers the right to jurisdictional discovery while a motion for dismissal under section 2-301 is pending. Why would a plaintiff need jurisdictional discovery if, from the get-go, the plaintiff had to plead a *prima facie* case of personal jurisdiction? Illogically, you require the plaintiff to already know what the plaintiff is supposed to find out in 'discovery *** on the issue of the court's jurisdiction over the person of the defendant' (Ill. S. Ct. R. 201(*l*)(1) (eff. Mar. 17, 2023))."

¶ 78          The answer to that objection is this. If, in moving for dismissal under section 2-301, the defendant opposes the complaint with an affidavit—and if the defendant thereby takes the position that the jurisdictional allegations in the complaint are not legally insufficient on their face—the plaintiff might need jurisdictional discovery to generate a counteraffidavit. See Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013). (Defendant criticizes plaintiff for failing to provide the circuit court with a Rule 191(b) affidavit. In the proceedings below, however, defendant argued—rightly, in our view—that the third amended complaint was jurisdictionally deficient on its face. Consequently, there were no affidavits. Defendant never controverted the third amended complaint by affidavit, seeing no need to do so. Correspondingly, there was no occasion for plaintiff to come up with a counteraffidavit. Because the proceedings never advanced beyond the pleading stage and into a duel of affidavits, Rule 191(b) is inapplicable.)

¶ 79    This is not to deny that, under Illinois Supreme Court Rule 201(d) (eff. Mar. 17, 2023), discovery may be initiated as soon as "all defendants have appeared or are required to appear." Even so, under Rule 201(c)(1), the circuit court may, in its sound discretion, limit or deny discovery as justice requires. If the materials before the court suggest that the case was brought without a colorable basis for the assertion of personal jurisdiction, a court could reasonably regard jurisdictional discovery as an annoying and expensive "fishing expedition" and could limit or deny it.

¶ 80    Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) lends support to the view that discovering first and pleading later is a misuse of discovery. In the light of Rule 137(a) (eff. Jan. 1, 2018), a circuit court could reasonably decide it would be unjust to require a nonresident defendant to undergo jurisdictional discovery on the speculative possibility that something might turn up to cure the facial jurisdictional insufficiency of a complaint that was in its third iteration. See Ill. S. Ct. R. 201(c)(1) (eff. Mar. 17, 2023). According to Rule 137(a), the signature on a complaint is a certificate that, "to the best of [the signer's] knowledge, information, and belief formed after reasonable inquiry," the complaint is "well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018). A complaint against a nonresident defendant is warranted by law only if the circuit court has personal jurisdiction over the defendant. The signature on the complaint is a certificate by the signer that the exercise of personal jurisdiction is well-grounded in fact and law. If the signer argues, as plaintiff argues in his brief, "Without [discovery], it is nearly impossible at this stage to make an intelligent determination as to whether either general or specific jurisdiction exists as to [defendant]," the certificate is problematic. Rule 137(a) requires such an intelligent determination up front, before the complaint is signed. Not only that, but

because Illinois is a fact-pleading jurisdiction (*Beahringer v. Page*, 204 Ill. 2d 363, 369 (2003)), the signer must show his or her work: the factual basis for personal jurisdiction must be spelled out in the complaint (see *Heller*, 166 Ill. App. 3d at 4). Arguably, then, if the plaintiff fails to plead a *prima facie* case of personal jurisdiction, "justice requires" the "limit[ation]" or "den[ial of] *** discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression" (Ill. S. Ct. R. 201(c)(1) (eff. Mar. 17, 2023)), for if the plaintiff is unable to carry this initial pleading burden, the complaint should not have been filed in the first place.

¶ 81         This assessment of fairness is flawed, someone might retort, because the facts establishing the existence of personal jurisdiction might be known only to the defendant and to the defendant's circle and, hence, these facts would be accessible to the plaintiff only by jurisdictional discovery. Once we start down that road, however, it is unclear where to stop. A similar—and surely unacceptable—argument would run as follows. The defendant *might* have done something wrong, but because wrongdoers do not typically publicize their wrongdoing, the plaintiff should be allowed to sue the defendant first and find out later, by discovery, whether the defendant did anything wrong. In other words, according to this argument, the plaintiff should be allowed to shoot first and ask questions later.

¶ 82         In fact, the plaintiff in *Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912 (2007), made pretty much that argument. The circuit court in that case ordered that until "the parties were at issue on the pleadings" (*id.* at 927), "there would be no discovery without prior leave of court" (*id.* at 919). Ultimately, the court granted the defendants' motion for dismissal with prejudice because, after repeated amendments, the plaintiff had failed to " 'plead facts specific to the essential elements of' " a civil conspiracy. *Id.* On appeal, the plaintiff in *Redelmann* maintained that the circuit court had erred not only by dismissing the conspiracy counts with prejudice, but

also by "failing to lift a stay on discovery and [to] order [the defendants] to comply with outstanding discovery requests." *Id.* at 914. After all, "[c]onspiracies are often intentionally shrouded in mystery," "mak[ing] it difficult for the plaintiff to allege with complete specificity all of the details of the conspiracy." (Internal quotation marks omitted.) *Id.* at 925. The plaintiff argued that, through discovery, he should have been allowed to lift the shroud. The circuit court, however, had been "unwilling to permit him to go on a fishing expedition," and the appellate court deferred to that exercise of discretion. *Id.* at 927. Facts, rather than bare conclusions, had to be pleaded, and in the words of the circuit court in *Redelmann*, " '[r]equests for discovery are not a substitute for compliance with this basic requirement.' " *Id.* at 919.

¶ 83        Likewise, under the policy determination the supreme court has made in Rule 137(a), requests for jurisdictional discovery are no substitute for pleading a *prima facie* case of personal jurisdiction. Arguably, it is unfair to subject a nonresident defendant to the ordeal and expense of jurisdictional discovery if the plaintiff lacks the faintest inkling of how the circuit court would have personal jurisdiction over the defendant.

¶ 84        It is true that, in *Aspen*—a case in which the motion for dismissal under section 2-301 was meritorious—the supreme court remarked in a footnote, "Under Illinois Supreme Court Rule 201(*l*), the parties have the right to discovery on the issue of personal jurisdiction." *Aspen*, 2017 IL 121281, ¶ 8 n.1. Also, it is true that, in *Wood*—another case in which the motion for dismissal under section 2-301 was meritorious—the Fourth District noted that the plaintiff had "failed to exercise his right to initiate jurisdictional discovery while [the defendant's] motion was pending with the trial court." *Wood*, 2024 IL App (4th) 230994, ¶ 27. *Aspen* and *Wood*, however, are not directly on point, for neither case involved a protective order.

¶ 85 It is clear that, absent a protective order saying otherwise (see Ill. S. Ct. R. 201(c)(1) (eff. Mar. 17, 2023)), parties have the right to "obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action" (Ill. S. Ct. R. 201(b)(1) (eff. Mar. 17, 2023)) and that one such relevant matter is personal jurisdiction, as Rule 201(*l*)(1) confirms (see Ill. S. Ct. R. 201(*l*)(1) (eff. Mar. 17, 2023)). A right to relevant discovery, including jurisdictional discovery, is the default setting, as expressed in *Aspen* and *Wood*. If, for example, a trade secret is relevant to the subject matter involved in the pending action, a party has the right, under Rule 201(b)(1), to obtain the trade secret by discovery, unless a protective order says otherwise. Likewise, if every scrap of paper a corporation has generated for the past 20 years is relevant to the subject matter involved in the pending action, a party has the right, under Rule 201(b)(1), to obtain every such scrap of paper by discovery, unless a protective order says otherwise. The question in the present case, however, is whether a circuit court abuses its discretion by issuing, under Rule (c)(1), a protective order limiting or denying jurisdictional discovery—to which, let us be clear, the plaintiff otherwise would have been entitled under the plain terms of Rule 201(b)(1) and (*l*)(1))—if the plaintiff fails to make a start at establishing a *prima facie* case of personal jurisdiction. *Aspen* and *Wood* do not speak to that question.

¶ 86 According to plaintiff, section 2-301(b) speaks to that question. The statute provides, "In disposing of a motion objecting to the court's jurisdiction over the person of the objecting party, the court shall consider all matters apparent from the papers on file in the case, affidavits submitted by any party, and any evidence adduced upon contested issues of fact." 735 ILCS 5/2-301(b) (West 2022). Plaintiff reasons along these lines: section 2-301(b) contemplates the presentation of evidence; without discovery, not all the relevant evidence can be presented; *ergo*, section 2-301(b) contemplates jurisdictional discovery before a complaint is dismissed for

failure to allege a *prima facie* case of personal jurisdiction. "[S]tatutes and [supreme court] rules," however, should be "harmonized and read *in pari materia*." *Illinois Consolidated Telephone Co. v. Aircall Communications, Inc.*, 101 Ill. App. 3d 767, 770 (1981). We read section 2-301(b) in harmony with Rule 201(c)(1), the provision for protective orders.

¶ 87                    F. The Vacation of a Prior Discovery Ruling

¶ 88        Plaintiff complains that Judge Tobin "reversed Judge Barch's well-reasoned prior order regarding jurisdictional discovery." While conceding that Judge Tobin was not bound by Judge Barch's prior rulings, plaintiff quotes *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113, 121 (1978): "[P]rior rulings should be vacated or amended only after careful consideration, especially if there is evidence of 'judge shopping' on behalf of one who has obtained an adverse ruling ***."

¶ 89        If there is evidence of judge shopping, it is by plaintiff, not by defendant. It was plaintiff who moved for the substitution of Judge Balogh after Judge Balogh denied plaintiff's motion to compel jurisdictional discovery. Even if the plaintiff had the right to obtain the substitution of Judge Balogh, judge shopping by right is nonetheless judge shopping.

¶ 90        We acknowledge that, regardless of judge shopping, "prior rulings should be vacated or amended only after careful consideration." *Id.* With reference to discovery rulings, the supreme court has said:

> "[O]nce the court has exercised its discretion, that ruling should not be reversed by another member of the court simply because there is disagreement on the manner in which that discretion was exercised. Rather, a successor judge, before whom the case has been assigned, should revise or modify previous discovery rulings only if there is a change of circumstances or additional facts which warrant such action. Such a rule minimizes the potential for 'judge shopping' and preserves the orderly

- 32 -

and efficient functioning of the judicial system. We note, too, that our holding is in accord with the general rule in the Federal courts, which recognizes the power of a Federal district judge to revise or modify a ruling by another judge in the same case, but requires a compelling reason for such action." *Balciunas v. Duff*, 94 Ill. 2d 176, 188 (1983).

¶ 91    Judge Tobin had additional facts that Judge Barch did not have: the facts in Zeien's deposition. Zeien testified that (1) he bought the vehicle from defendant in Kentucky; (2) the vehicle he decided to buy at defendant's dealership in Kentucky was not the same vehicle he had previously discussed with defendant, by telephone, in Illinois; (3) defendant delivered the vehicle to Zeien in Kentucky; and (4) after buying the vehicle from defendant in Kentucky and accepting delivery of the vehicle in Kentucky, Zeien had no further contact with defendant. Judge Tobin could have reasonably decided that these additional facts made defendant's contact with Illinois even more attenuated. He could have decided that Zeien's deposition so weakened the argument for jurisdictional discovery and the potential for curing the complaint by a fourth amendment that the litigation against defendant should be terminated as soon as he could draft a dismissal order, thereby obviating jurisdictional discovery. Effectively, Zeien's deposition was a significant item of jurisdictional discovery, although the deposition was taken in a different case.

¶ 92                          III. CONCLUSION

¶ 93    For the foregoing reasons, we affirm the circuit court's judgment.

¶ 94    Affirmed.